1   Bret A. Stone      SBN 190161  BStone@PaladinLaw.com
    PALADIN LAW GROUP® LLP
2   3 W. Carrillo Street
    Santa Barbara, CA  93101
3   Telephone:     (805) 898-9700
    Facsimile:     (805) 852-2495
4
5   Counsel for the Miller Marital Deduction Trust, by and through its
    trustees, Helen Miller and James Morris; and Helen Miller
6
7                 UNITED STATES DISTRICT COURT
8                 EASTERN DISTRICT OF CALIFORNIA
9
10  MILLER MARITAL DEDUCTION TRUST,         Case No.
    by and through its trustees, Helen Miller and
11  James Morris; and HELEN MILLER, an      COMPLAINT FOR:
    individual,
12                                          1.    Cost Recovery – CERCLA § 107(a)
                Plaintiffs,                 2.    Declaratory Relief – CERCLA § 113(g)
13
            v.
14
    ESTATE OF MARK B. DUBOIS,
15  DECEASED, an individual and dba Glo Dry
    Cleaning System; MARY DUBOIS, an
16  individual and dba Glo Dry Cleaning
    System; ESTATE OF JOHN RUBY,
17  DECEASED, an individual and dba Glo Dry
    Cleaning System; ESTATE OF
18  KATHERINE RUBY, DECEASED, an
    individual and dba Glo Dry Cleaning
19  System; ESTATE OF VANCE H. VAN
    GORP, DECEASED, an individual and dba
20  Glo Dry Cleaning System; ESTATE OF
    HELEN VAN GORP, DECEASED, an
21  individual and dba Glo Dry Cleaning
    System; ESTATE OF RICHARD
22  CALHOUN, DECEASED, an individual and
    dba Glo Dry Cleaning System; DOROTHY
23  CAROLYN CALHOUN, an individual and
    dba Glo Dry Cleaning System; ESTATE OF
24  RUDOLPH MARENGO, DECEASED, an
    individual; ESTATE OF LUCILLE M.
25  MARENGO, DECEASED, an individual;
    ESTATE OF JOSEPH MARENGO, JR.,
26  DECEASED, an individual; ESTATE OF
    MERYLE M. MARENGO, DECEASED, an
27  individual and ESTATE OF JACK MILLER,
    DECEASED, an individual,
28
                Defendants.



Plaintiffs the Miller Marital Deduction Trust, by and through its trustees, Helen Miller and James Morris, and Helen Miller, an individual (collectively, "Plaintiffs") bring this action against Defendants Estate of Mark B. DuBois, Deceased, an individual and dba Glo Dry Cleaning System; Mary DuBois, an individual and dba Glo Dry Cleaning System; Estate of John Ruby, Deceased, an individual and dba Glo Dry Cleaning System; Estate of Katherine Ruby, Deceased, an individual and dba Glo Dry Cleaning System; Estate of Vance H. Van Gorp, Deceased, an individual and dba Glo Dry Cleaning System; Estate of Helen Van Gorp, Deceased, an individual and dba Glo Dry Cleaning System; Estate of Richard Calhoun, Deceased, an individual and dba Glo Dry Cleaning System; Dorothy Carolyn Calhoun, an individual and dba Glo Dry Cleaning System; Estate of Rudolph Marengo, Deceased, an individual; Estate of Lucille M. Marengo, Deceased, an individual; Estate of Joseph Marengo, Jr., Deceased, an individual; and Estate of Meryle M. Marengo, Deceased, an individual, Estate of Jack Miller, Deceased, an individual (collectively, "Defendants") allege upon knowledge as to their own acts, and upon information and belief as to the acts of all others, as follows:

## NATURE OF THE ACTION

1.     Plaintiffs file this third party action in defense of claims against them in order to avoid or minimize their alleged liability associated with responding to directives by the California Regional Water Quality Control Board – Central Valley Region related to environmental contamination.

2.     The area of contamination for which Plaintiffs seek relief includes the property located at 6045 Pacific Avenue, Stockton, California (the "Property") and areas to which the contamination has migrated outside the boundaries of the Property (the "Site").

## PARTIES

### *Plaintiffs*

3.     The Miller Marital Deduction Trust is an irrevocable trust that, after the death of Jack Miller, succeeded to the interests of the Miller Family Trust, which was created in accordance with the laws of the State of California on October 11, 1989 by settlors Jack Miller and Helen M. Miller to hold their community and separate property.  The Property is currently

1  held by the Miller Marital Deduction Trust, which is the successor interest to Jack Miller, Helen

2  Miller, and the Miller Family Trust with respect to ownership of the Property.

3        4.      Helen Miller is an individual and a trustee of the Miller Marital Deduction Trust.

4        5.      James Morris is a trustee of the Miller Marital Deduction Trust.

5  ***Defendants***

6        6.      Glo Dry Cleaning System operated a dry cleaning business at the Property from

7  approximately 1956 to 1986.  A complete history of the operations of the business is currently

8  unknown and it is anticipated that an amendment to this Complaint alleging such history may be

9  necessary.

10        7.      Estate of Mark B. DuBois, Deceased, is named as a defendant herein to the extent

11  of his estate's insurance assets pursuant to California Probate Code §§ 550 through 555 to

12  establish the decedent's liability for which he was protected by liability insurance policies.  Mark

13  DuBois was an individual who operated a dry cleaning business at the Property known as Glo

14  Dry Cleaning System from at least 1956 to approximately 1964.

15        8.      Mary DuBois is an individual who operated a dry cleaning business at the Property

16  known as Glo Dry Cleaning System from at least 1956 to approximately 1964.

17        9.      Estate of John Ruby, Deceased, is named as a defendant herein to the extent of his

18  estate's insurance assets pursuant to California Probate Code §§ 550 through 555 to establish the

19  decedent's liability for which he was protected by liability insurance policies.  John Ruby was an

20  individual who operated a dry cleaning business at the Property known as Glo Dry Cleaning

21  System from at least 1964 to approximately 1973.

22        10.      Estate of Katherine Ruby, Deceased, is named as a defendant herein to the extent

23  of her estate's insurance assets pursuant to California Probate Code §§ 550 through 555 to

24  establish the decedent's liability for which she was protected by liability insurance policies.

25  Katherine Ruby was an individual who operated a dry cleaning business at the Property known as

26  Glo Dry Cleaning System from at least 1964 to approximately 1973.

27        11.      Estate of Vance H. Van Gorp, Deceased, is named as a defendant herein to the

28  extent of his estate's insurance assets pursuant to California Probate Code §§ 550 through 555 to



1    establish the decedent's liability for which he was protected by liability insurance policies. Vance

2    H. Van Gorp was an individual who operated a dry cleaning business at the Property known as

3    Glo Dry Cleaning System from at least 1973 to approximately 1980.

4         12.    Estate of Helen Van Gorp, Deceased, is named as a defendant herein to the extent

5    of her estate's insurance assets pursuant to California Probate Code §§ 550 through 555 to

6    establish the decedent's liability for which she was protected by liability insurance policies. Helen

7    Van Gorp was an individual who operated a dry cleaning business at the Property known as Glo

8    Dry Cleaning System from at least 1973 to approximately 1980.

9         13.    Estate of Richard Calhoun, Deceased, is named as a defendant herein to the extent

10   of his estate's insurance assets pursuant to California Probate Code §§ 550 through 555 to

11   establish the decedent's liability for which he was protected by liability insurance policies.

12   Richard Calhoun was an individual who operated a dry cleaning business at the Property known

13   as Glo Dry Cleaning System from at least 1980 to approximately 1986.

14        14.    Dorothy Carolyn Calhoun is an individual who operated a dry cleaning business at

15   the Property known as Glo Dry Cleaning System from at least 1980 to approximately 1986.

16        15.    Estate of Rudolph Marengo, Deceased, is named as a defendant herein to the

17   extent of his estate's insurance assets pursuant to California Probate Code §§ 550 through 555 to

18   establish the decedent's liability for which he was protected by liability insurance policies.

19   Rudolph Marengo owned the Property and leased it to a dry cleaning business known as Glo Dry

20   Cleaning System from at least 1956 to 1970.

21        16.    Estate of Lucille M. Marengo, Deceased, is named as a defendant herein to the

22   extent of her estate's insurance assets pursuant to California Probate Code §§ 550 through 555 to

23   establish the decedent's liability for which she was protected by liability insurance policies.

24   Lucille M. Marengo owned the Property and leased it to a dry cleaning business known as Glo

25   Dry Cleaning System from at least 1956 to 1970.

26        17.    Estate of Joseph Marengo, Jr. Deceased, is named as a defendant herein to the

27   extent of his estate's insurance assets pursuant to California Probate Code §§ 550 through 555 to

28   establish the decedent's liability for which he was protected by liability insurance policies.

Joseph Marengo, Jr. owned the Property and leased it to a dry cleaning business known as Glo Dry Cleaning System from at least 1956 to 1970.

18.     Estate of Meryle M. Marengo, Deceased, is named as a defendant herein to the extent of her estate's insurance assets pursuant to California Probate Code §§ 550 through 555 to establish the decedent's liability for which she was protected by liability insurance policies. Meryle M. Marengo owned the Property and leased it to a dry cleaning business known as Glo Dry Cleaning System from at least 1956 to 1970.

19.     Estate of Jack Miller, Deceased, is named as a defendant herein to the extent of his estate's insurance assets pursuant to California Probate Code §§ 550 through 555 to establish the decedent's liability for which he was protected by liability insurance policies.  Jack Miller owned the Property and leased it to a dry cleaning business known as Glo Dry Cleaning System from at least 1970 to 1986.

## JURISDICTION, VENUE, AND NOTICE

20.     This Court has jurisdiction over the subject matter of Plaintiffs' First Cause of Action pursuant to section 107 of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9607.

21.     Venue is proper in this Court pursuant to CERCLA § 113(b) because the release and damage occurred in this judicial district.  42 U.S.C. § 9613(b).

22.     Plaintiffs have satisfied all jurisdictional prerequisites to filing this Complaint.

## GENERAL ALLEGATIONS

23.     The Site has allegedly been impacted by the presence of tetrachloroethylene ("PCE") and other solid and hazardous wastes.

24.     PCE is an industrial solvent that has been used in significant quantities in the dry cleaning industry since the 1940s.

25.     PCE and its breakdown products are manmade chemicals and are not naturally occurring.

26.     Common synonyms for PCE include perc, perchlor, carbon bichloride, carbon dichloride, ethylene tetrachloride, petrochlorothylene, perclene, perk, perchloroethene, 1,1,2,2-

tetrachloroethylene, and tetrachloroethene.

27.     PCE degrades to TCE, which in turn degrades to DCE, which in turn degrades to vinyl chloride, which in turn degrades to ethene, and finally to carbon dioxide, water, and free chlorine.

28.     As a toxic, long-lived, volatile, chlorinated hydrocarbon and likely carcinogen, PCE and many of its degradation products are closely regulated by the state of California and the federal government.  PCE, TCE, DCE, and vinyl chloride are each a "hazardous substance" as that term is defined in federal law, 42 U.S.C. § 9601(14).

29.     All groundwater within the state of California, including the groundwater in, at, and around the Site and all groundwater that has been or is threatened with being adversely impacted by contamination at and emanating from the Site is "water of the state" pursuant to California Water Code § 13050.

30.     Each Defendant caused or contributed to the past or present handling, storage, treatment, transportation, generation, release, or disposal of hazardous substances, hazardous waste, and/or solid waste in the environment in, at, and around the Site, including soil, land, subsurface strata, air, vapor, groundwater, surface water, and the waters of the state of California, because each Defendant released or otherwise discarded hazardous substances, hazardous waste, and/or solid waste, or controlled and/or operated the Site and business from which hazardous substances, hazardous waste, and/or solid waste were released or otherwise discarded, and failed to prevent or abate the hazardous substances, hazardous waste, and/or solid waste  contamination.

31.     At various times between 1956 and 1986 Defendants intentionally, negligently, suddenly, and accidentally caused or contributed to the presence of hazardous substances, hazardous waste, and/or solid waste in the environment, including soil, land, subsurface strata, air, vapor, groundwater, surface water, and the waters of the state of California, at the Site.  Once released into the environment, these hazardous substances, hazardous waste, and/or solid wastes have continued to spread and migrate within the environment at the Site, but Defendants failed to abate this contamination.

32.     Defendants operated the dry cleaning business at the time PCE was spilled at the

Property as a result of equipment malfunctions.

33.     Defendants operated the dry cleaning business at the time PCE was spilled at the Property as a result of one or more boil overs of the cooker.

34.     Defendants operated the dry cleaning business at the time PCE was spilled at the Property as a result of one or more worn gaskets.

35.     Defendants operated the dry cleaning business at the time PCE was spilled at the Property during the delivery of PCE.

36.     Defendants operated the dry cleaning business at the time PCE was spilled at the Property when spent filter materials were placed in the trash or dumpster or other unmarked containers.

37.     Defendants operated the dry cleaning business at the time PCE was spilled at the Property when separator water contaminated with PCE was emptied into the sewer system, down a drain, or down a toilet.

38.     Defendants operated the dry cleaning business at the time PCE was spilled at the Property when separator water contaminated with PCE was emptied outside the back door onto the ground.

39.     Defendants operated the dry cleaning business at the time PCE was spilled at the Property when dry cleaning equipment was dismantled and removed from the Property.

40.     Defendants operated the dry cleaning business at the Property without a hazardous materials storage or generator permit, as required by applicable federal, state, or local laws.

41.     Defendants operated the dry cleaning business at the Property without manifesting and tracking solid and hazardous wastes, as required by applicable federal, state, or local laws.

42.     Defendants operated the dry cleaning business at the Property without a hazardous materials business plan or proper hazardous materials training, as required by applicable federal, state, or local laws.

43.     Defendants owned the Property at the time PCE was used at the Property.

44.     Defendants owned the Property at the time PCE was spilled, released, or disposed of at the Property.

45.     As a result of Defendants' releases of hazardous substances, hazardous waste, and/or solid waste at the Site, Plaintiffs have incurred and will continue to incur response costs in order to investigate and remediate the contamination.

### FIRST CAUSE OF ACTION
#### (Cost Recovery – CERCLA § 107(a))
#### (Against All Defendants)

46.     Plaintiffs reallege and incorporate by reference the allegations set forth above in paragraphs 1 through 45, inclusive, as though set forth in full herein.

47.     Defendants used, processed, produced, stored, treated, and/or generated hazardous substances in the course of their dry cleaning operation at the Property.

48.     Defendants caused or contributed to the spilling, leaking, disposal, and release of hazardous substances in the course of their dry cleaning operations at the Property thereby creating a condition of hazardous substance contamination at the Site.

49.     As a result of the condition of hazardous substance contamination at the Site, Plaintiffs undertook various response actions and have incurred various response costs in connection with the hazardous substances at the Site.

50.     Defendants transported or arranged for transport of hazardous substances which they owned or possessed to the Property, and stored, treated, and disposed of hazardous substances at the Property, and otherwise owned, handled, and operated the Property during the time that hazardous substances were disposed of at the Site.  Defendants are thereby jointly and severally liable under CERCLA § 107(a), 42 U.S.C. § 9607(a).

51.     The Site is a "facility," as that term is defined in CERCLA § 101(9), 42 U.S.C. § 9601(9).

52.     A "release" or threatened release of PCE and other "hazardous substances," as those terms are defined in CERCLA §§ 101(22), (14), 42 U.S.C. §§ 9601(22), (14), has occurred at the Site.

53.     Plaintiffs did not cause or contribute to the environmental contamination at the Site and deny that they are liable for costs incurred as the result of the alleged release or threatened release of hazardous substances at the Site.  However, in the interest of an expeditious



cleanup and acting in good faith, Plaintiffs have incurred and continue to incur necessary response costs to investigate, remove, and remediate the environmental contamination at the Site consistent with the National Contingency Plan.

54.     Defendants are strictly liable to Plaintiffs for the costs referred to above and for interest on those costs pursuant to CERCLA § 107(a), 42 U.S.C. § 9607(a).

**SECOND CAUSE OF ACTION**
**(Cost Recovery – Declaratory Relief — CERCLA § 113(g) and 28 U.S.C.  § 2201 *et seq.*)**
**(Against All Defendants)**

55.     Plaintiffs reallege and incorporate by reference the allegations set forth above in paragraphs 1 through 54, inclusive, as though set forth in full herein.

56.     An actual legal controversy exists between Plaintiffs, on the one hand, and Defendants, on the other hand.  Plaintiffs contend that they are entitled to a declaration that Defendants are liable under CERCLA for all past, present, and future response costs and other damages incurred by Plaintiffs in connection with the Site.  Plaintiffs are informed and believe that Defendants contend otherwise.

57.     Plaintiffs desire and are entitled to a declaration of the parties' respective rights and duties pursuant to CERCLA § 113(g), 42 U.S.C. § 9613(g) and 28 U.S.C. § 2201 *et seq*.  No adequate or speedy remedy exists for Plaintiffs in the absence of such a judicial declaration. Accordingly, Plaintiffs hereby request a declaration from the Court setting forth Plaintiffs' and Defendants' liability for past, present and future response, removal and remediation costs, and other penalties and/or damages imposed on Plaintiffs in connection with the Site.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully requests that judgment be entered in their favor for the following:

1.     For damages from Defendants to compensate Plaintiffs for the costs they have incurred to date in excess of $60,000 and will incur in response, removal, or remedial efforts, the exact amount of which will be ascertained according to proof;

2.     For a declaration that Defendants are liable under CERCLA for all past, present, and future response costs and other damages incurred and to be incurred by Plaintiffs in



1   connection with the Site including costs for lost profit when the sale of the Property fell through

2   because of the contamination;

3        3.      For compensatory and consequential damages in excess of $3 million including;

4        4.      For all costs of suit herein;

5        5.      For such other and further relief as this Court deems just and proper.

6   DATED: August 10, 2016                      PALADIN LAW GROUP® LLP

7

8                                        By: /s/
                                             Bret A. Stone
9                                            Counsel for Plaintiffs

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

