1  Bret A. Stone      SBN 190161  BStone@PaladinLaw.com
   Melanie A. Mariotti  SBN 309000  MMariotti@PaladinLaw.com
2  PALADIN LAW GROUP® LLP
   220 W. Gutierrez Street
3  Santa Barbara, CA  93101
   Telephone:    (805) 898-9700
4  Facsimile:    (805) 852-2495

> **FILED**
>
> **Sep 12, 2017**
>
> CLERK, U.S. DISTRICT COURT
> EASTERN DISTRICT OF CALIFORNIA

5  Counsel for Plaintiffs and Counter-Defendants
   Miller Marital Deduction Trust, by and through its trustees,
6  Helen Miller and James Morris; and Helen Miller

7

UNITED STATES DISTRICT COURT

8

EASTERN DISTRICT OF CALIFORNIA

9

| | |
|---|---|
| 10  MILLER MARITAL DEDUCTION TRUST, by and through its trustees, Helen Miller and James Morris; *et al.*, | Case No. 2:16-CV-01883-SB |
| 11 | *Assigned to Judge Stanley A. Bastian* |
| 12          *Plaintiffs*, | FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL FOR: |
| 13  *v.* | |
| 14  ESTATE OF MARK B. DUBOIS, DECEASED, *et al.*, | 1.  Cost Recovery – CERCLA § 107(a)<br>2.  Declaratory Relief – CERCLA § 113(g)<br>3.  Abatement of a Public Nuisance<br>4.  Abatement of a Private Nuisance<br>5.  Continuing Trespass<br>6.  Negligence<br>7.  Ultrahazardous Activity<br>8.  Contribution<br>9.  Contribution under Hazardous Substances Account Act<br>10. Equitable Indemnity<br>11. Breach of Contract<br>12. Express Indemnity<br>13. Waste<br>14. Declaratory Relief |
| 15          *Defendants*. | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22  AND RELATED CROSS-ACTIONS. | Action filed:  August 10, 2016<br>Discovery cut-off:  January 2, 2018<br>Trial date: May 21, 2018 |
| 23 | |

24        Plaintiffs and Counter-Defendants the Miller Marital Deduction Trust, by and through its

25  trustees, Helen Miller and James Morris, and Helen Miller, an individual (collectively,

26  "Plaintiffs") bring this action against Defendants Estate of Mark B. DuBois, Deceased, an

27  individual and dba Glo Dry Cleaning System; Mary DuBois, an individual and dba Glo Dry

28  Cleaning System; Estate of John Ruby, Deceased, an individual and dba Glo Dry Cleaning

FIRST AMENDED COMPLAINT

System; Estate of Katherine Ruby, Deceased, an individual and dba Glo Dry Cleaning System; Estate of Vance H. Van Gorp, Deceased, an individual and dba Glo Dry Cleaning System; Estate of Helen Van Gorp, Deceased, an individual and dba Glo Dry Cleaning System; Estate of Richard Calhoun, Deceased, an individual and dba Glo Dry Cleaning System; Dorothy Carolyn Calhoun, an individual and dba Glo Dry Cleaning System; Estate of Rudolph Marengo, Deceased, an individual; Estate of Lucille M. Marengo, Deceased, an individual; Estate of Joseph Marengo, Jr., Deceased, an individual; and Estate of Meryle M. Marengo, Deceased, an individual, Estate of Jack Miller, Deceased, an individual (collectively, "Defendants") and allege upon knowledge as to their own acts, and upon information and belief as to the acts of all others, as follows:

## NATURE OF THE ACTION

1.      Plaintiffs file this third party action in defense of claims against them in order to avoid or minimize their alleged liability associated with responding to directives by the California Regional Water Quality Control Board – Central Valley Region related to environmental contamination.

2.      The area of contamination for which Plaintiffs seek relief includes the property located at 6045 Pacific Avenue, Stockton, California (the "Property") and areas to which the contamination has migrated outside the boundaries of the Property (the "Site").

## PARTIES

### *Plaintiffs*

3.      The Miller Marital Deduction Trust is an irrevocable trust that, after the death of Jack Miller, succeeded to the interests of the Miller Family Trust, which was created in accordance with the laws of the State of California on October 11, 1989 by settlors Jack Miller and Helen M. Miller to hold their community and separate property.  The Property is currently held by the Miller Marital Deduction Trust, which is the successor interest to Jack Miller, Helen Miller, and the Miller Family Trust with respect to ownership of the Property.

4.      Helen Miller is an individual and a trustee of the Miller Marital Deduction Trust.

5.      James Morris is a trustee of the Miller Marital Deduction Trust.

///

*Defendants*

6.     Glo Dry Cleaning System operated a dry cleaning business at the Property from approximately 1956 to approximately 1985.  A complete history of the operations of the business is currently unknown and it is anticipated that an amendment to this Complaint alleging such history may be necessary.

7.     Estate of Mark B. DuBois, Deceased, is named as a defendant herein to the extent of his estate's insurance assets pursuant to California Probate Code §§ 550 through 555 to establish the decedent's liability for which he was protected by liability insurance policies.  Mark DuBois was an individual who operated a dry cleaning business at the Property known as Glo Dry Cleaning System from approximately 1956 to approximately 1964.  He also owned a dry cleaning business at the Property known as Glo Dry Cleaning System from approximately 1956 to approximately 1964.

8.     Mary DuBois is an individual who operated a dry cleaning business at the Property known as Glo Dry Cleaning System from approximately 1956 to approximately 1964.  She also owned a dry cleaning business at the Property known as Glo Dry Cleaning System from approximately 1956 to approximately 1964.

9.     Estate of John Ruby, Deceased, is named as a defendant herein to the extent of his estate's insurance assets pursuant to California Probate Code §§ 550 through 555 to establish the decedent's liability for which he was protected by liability insurance policies.  John Ruby was an individual who operated a dry cleaning business at the Property known as Glo Dry Cleaning System from approximately 1964 to approximately 1973.  He also owned a dry cleaning business at the Property known as Glo Dry Cleaning System from approximately 1964 to approximately 1973.

10.     Estate of Katherine Ruby, Deceased, is named as a defendant herein to the extent of her estate's insurance assets pursuant to California Probate Code §§ 550 through 555 to establish the decedent's liability for which she was protected by liability insurance policies.  Katherine Ruby was an individual who operated a dry cleaning business at the Property known as Glo Dry Cleaning System from approximately 1964 to approximately 1973.  She also owned a

FIRST AMENDED COMPLAINT

dry cleaning business at the Property known as Glo Dry Cleaning System from approximately 1964 to approximately 1973.

11.    Estate of Vance H. Van Gorp, Deceased, is named as a defendant herein to the extent of his estate's insurance assets pursuant to California Probate Code §§ 550 through 555 to establish the decedent's liability for which he was protected by liability insurance policies. Vance H. Van Gorp was an individual who operated a dry cleaning business at the Property known as Glo Dry Cleaning System from approximately 1973 to approximately 1980.  He also owned a dry cleaning business at the Property known as Glo Dry Cleaning System from approximately 1973 to approximately 1980.

12.    Estate of Helen Van Gorp, Deceased, is named as a defendant herein to the extent of her estate's insurance assets pursuant to California Probate Code §§ 550 through 555 to establish the decedent's liability for which she was protected by liability insurance policies. Helen Van Gorp was an individual who operated a dry cleaning business at the Property known as Glo Dry Cleaning System from approximately 1973 to approximately 1980.  She also owned a dry cleaning business at the Property known as Glo Dry Cleaning System from approximately 1973 to approximately 1980.

13.    Estate of Richard Calhoun, Deceased, is named as a defendant herein to the extent of his estate's insurance assets pursuant to California Probate Code §§ 550 through 555 to establish the decedent's liability for which he was protected by liability insurance policies. Richard Calhoun was an individual who operated a dry cleaning business at the Property known as Glo Dry Cleaning System from approximately 1981 to approximately 1985.  He also owned a dry cleaning business at the Property known as Glo Dry Cleaning System from approximately 1981 to approximately 1985.

14.    Dorothy Carolyn Calhoun is an individual who operated a dry cleaning business at the Property known as Glo Dry Cleaning System from approximately 1981 to approximately 1985.  She also owned a dry cleaning business at the Property known as Glo Dry Cleaning System from approximately 1981 to approximately 1985.

15.    Estate of Rudolph Marengo, Deceased, is named as a defendant herein to the

extent of his estate's insurance assets pursuant to California Probate Code §§ 550 through 555 to establish the decedent's liability for which he was protected by liability insurance policies. Rudolph Marengo owned the Property and leased it to a dry cleaning business known as Glo Dry Cleaning System from approximately 1956 to approximately 1970.

16.     Estate of Lucille M. Marengo, Deceased, is named as a defendant herein to the extent of her estate's insurance assets pursuant to California Probate Code §§ 550 through 555 to establish the decedent's liability for which she was protected by liability insurance policies. Lucille M. Marengo owned the Property and leased it to a dry cleaning business known as Glo Dry Cleaning System from approximately 1956 to approximately 1970.

17.     Estate of Joseph Marengo, Jr. Deceased, is named as a defendant herein to the extent of his estate's insurance assets pursuant to California Probate Code §§ 550 through 555 to establish the decedent's liability for which he was protected by liability insurance policies. Joseph Marengo, Jr. owned the Property and leased it to a dry cleaning business known as Glo Dry Cleaning System from approximately 1956 to approximately 1970.

18.     Estate of Meryle M. Marengo, Deceased, is named as a defendant herein to the extent of her estate's insurance assets pursuant to California Probate Code §§ 550 through 555 to establish the decedent's liability for which she was protected by liability insurance policies. Meryle M. Marengo owned the Property and leased it to a dry cleaning business known as Glo Dry Cleaning System from approximately 1956 to approximately 1970.

19.     Estate of Jack Miller, Deceased, is named as a defendant herein to the extent of his estate's insurance assets pursuant to California Probate Code §§ 550 through 555 to establish the decedent's liability for which he was protected by liability insurance policies. Jack Miller owned the Property and leased it to a dry cleaning business known as Glo Dry Cleaning System from approximately 1970 to approximately 1985.

**JURISDICTION, VENUE, AND NOTICE**

20.     This Court has jurisdiction over the subject matter of Plaintiffs' First and Second Causes of Action pursuant to sections 107 and 113(g) of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9607; 42 U.S.C. § 9613(g).

21.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the subject matter of Plaintiffs' other causes of action because those claims are so related to the federal claims in this action that they form the same case and controversy under Article III of the U.S. Constitution.

22.     Venue is proper in this Court pursuant to CERCLA § 113(b) because the release and damage occurred in this judicial district.  42 U.S.C. § 9613(b).

23.     Plaintiffs have satisfied all jurisdictional prerequisites to filing this First Amended Complaint.

## GENERAL ALLEGATIONS

24.     The Site has allegedly been impacted by the presence of chemicals of concern, including tetrachloroethylene ("PCE") and its breakdown products (TCE, DCE, and VC as defined below), other solid wastes, hazardous substances, and hazardous wastes (collectively, "Chemicals of Concern").

25.     PCE is an industrial solvent that has been used in significant quantities in the dry cleaning industry since the 1940s.

26.     PCE and its breakdown products are manmade chemicals.

27.     Common synonyms for PCE include perc, perchlor, carbon bichloride, carbon dichloride, ethylene tetrachloride, petrochlorothylene, perclene, perk, perchloroethene, 1,1,2,2-tetrachloroethylene, and tetrachloroethene.

28.     Reductive dechlorination of chlorinated solvents occurs according to the following sequence: PCE degrades to trichloroethylene ("TCE"), which in turn degrades to 1,2 dichloroethene ("DCE"), which in turn degrades to vinyl chloride ("VC"), which finally degrades to ethene.

29.     As a toxic, long-lived, volatile, chlorinated hydrocarbon and likely carcinogen, PCE and many of its degradation products are closely regulated by the state of California and the Federal Government.  PCE, TCE, DCE, and VC are each a hazardous substance as that term is defined in federal law, 42 U.S.C. § 9601(14), and state law, California Health & Safety Code § 25281(g), and are each a hazardous waste and solid waste as those terms are defined in federal

1   law, 42 U.S.C. §§ 6903(5), (27), respectively.

2        30.    All groundwater within the state of California, including the groundwater in, at,

3   around and in the vicinity of the Site is "water of the state" pursuant to California Water Code §

4   13050.  The groundwater at and migrating to or from the Site has been or is threatened with being

5   adversely impacted by alleged contamination at or emanating to or from the Site.

6        31.    The executive and legislative branches in California have determined that the use,

7   handling, and storage of PCE in the dry cleaning industry should be phased out because of the

8   risk of serious harm to human health and the environment resulting from spills of PCE by dry

9   cleaning businesses, which cannot be eliminated by the exercise of utmost care.

10        32.    Each Defendant caused or contributed to the past or present handling, storage,

11   treatment, transportation, generation, release, or disposal of Chemicals of Concern in the

12   environment in, at, or around the Property or Site, including soil, land, subsurface strata, air,

13   vapor, groundwater, surface water, and the waters of the state of California, because each

14   Defendant released, discharged, or otherwise discarded Chemicals of Concern, or controlled or

15   operated the Property or business from which Chemicals of Concern were released or otherwise

16   discarded, and failed to prevent or abate contamination from Chemicals of Concern.

17        33.    At various times between 1956 and 1985, Defendants willfully, intentionally,

18   recklessly, negligently, suddenly, and accidentally caused or contributed to the presence of

19   Chemicals of Concern in the environment, including soil, land, subsurface strata, air, vapor,

20   groundwater, surface water, and the waters of the state of California, at the Site.

21        34.    Once the various willful, intentional, negligent, sudden and accidental and/or

22   reckless releases and/or discharges, were released into the environment, these Chemicals of

23   Concern continued to spread and migrate within the environment at or to the Site, but Defendants

24   failed to abate the contamination.

25        35.    Defendants owned or operated the dry cleaning business at the time Chemicals of

26   Concern were spilled, released, and discharged at the Site as a result of equipment malfunctions.

27        36.    Defendants owned or operated the dry cleaning business at the time Chemicals of

28   Concern were spilled, released, and discharged at the Site due to the willful, intentional, reckless,

1   negligent, or improper use, handling, and/or disposal practices of the dry cleaning operations.

2       37.     Defendants owned or operated the dry cleaning business at the time Chemicals of

3   Concern were spilled, released, and discharged at the Site as a result of one or more boil overs of

4   the cooker.

5       38.     Defendants owned or operated the dry cleaning business at the time Chemicals of

6   Concern were spilled, released, and discharged at the Site as a result of lack of proper

7   maintenance of the dry cleaning equipment.

8       39.     Defendants owned or operated the dry cleaning business at the time Chemicals of

9   Concern were spilled, released, and discharged at the Site as a result of one or more worn or

10  failed gaskets.

11      40.     Defendants owned or operated the dry cleaning business at the time Chemicals of

12  Concern were spilled, released, and discharged at the Site during the delivery of PCE.

13      41.     Defendants owned or operated the dry cleaning business at the time Chemicals of

14  Concern were spilled, released, and discharged at the Site when spent filter materials were placed

15  in the trash or dumpster or other unmarked containers.

16      42.     Defendants owned or operated the dry cleaning business at the time Chemicals of

17  Concern were spilled, released, and discharged at the Site when separator water contaminated

18  with Chemicals of Concern were emptied, released, and discharged into the sewer system, down a

19  drain, or down a toilet.

20      43.     Defendants owned or operated the dry cleaning business at the time Chemicals of

21  Concern were spilled, released, and discharged at the Site when separator water contaminated

22  with Chemicals of Concern were emptied, released, and discharged outside the back door onto the

23  ground.

24      44.     Defendants owned or operated the dry cleaning business at the time Chemicals of

25  Concern were spilled, released, and discharged at the Site when dry cleaning equipment was

26  dismantled and removed from the Property.

27      45.     Defendants owned or operated the dry cleaning business at the Site without a

28  hazardous materials storage or generator permit, as required by applicable federal, state, or local

1    laws.

2       46.    Defendants owned or operated the dry cleaning business at the Site without

3 manifesting and tracking Chemicals of Concern as required by applicable federal, state, or local

4 laws.

5       47.    Defendants owned or operated the dry cleaning business at the Site without a

6 hazardous materials business plan or proper hazardous materials training, as required by

7 applicable federal, state, or local laws.

8       48.    The Marengo and Miller Defendants owned the Property at the time Chemicals of

9 Concern were used at the Property.

10       49.    The Marengo and Miller Defendants owned the Property at the time Chemicals of

11 Concern were spilled, released, or disposed of at the Property.

12       50.    As a result of and in response to Defendants' willful, intentional, negligent, sudden

13 and accidental, and/or reckless releases and discharges of Chemicals of Concern at the Site,

14 ownership of the property, and ownership of the Glo Dry Cleaning System, Plaintiffs have

15 incurred costs to respond to the RWQCB directives and will incur costs for initial monitoring and

16 investigation, mitigation, and remediation of the soil, soil vapor, groundwater, and indoor air at

17 the Site.

18
### FIRST CAUSE OF ACTION
**(Cost Recovery – CERCLA § 107(a))**
19
**(Against All Defendants)**

20       51.    Plaintiffs reallege and incorporate by reference the allegations set forth above in

21 paragraphs 1 through 50, inclusive, as though set forth in full herein.

22       52.    Defendants used, processed, produced, stored, treated, and/or generated Chemicals

23 of Concern in the course of their dry cleaning operation at the Site.

24       53.    Defendants caused or contributed to the spilling, leaking, disposal, and release of

25 Chemicals of Concern in the course of their dry cleaning operations at the Site thereby creating

26 the alleged Chemicals of Concern contamination at and emanating from the Site.

27       54.    As a result of and in response to Defendants' releases of Chemicals of Concern,

28 Plaintiffs have incurred costs to respond to the RWQCB directives and will incur costs for initial

1  monitoring and investigation, mitigation, and remediation of the soil, soil vapor, groundwater,

2  and indoor air at the Site.

3       55.     Defendants transported or arranged for transport of Chemicals of Concern which

4  they owned or possessed to the Property, and stored, treated, and disposed of Chemicals of

5  Concern at the Site, and otherwise owned, handled, and operated the Property during the time that

6  Chemicals of Concern were released and disposed of at or from the Site.  Defendants are thereby

7  jointly and severally liable under CERCLA § 107(a), 42 U.S.C. § 9607(a).

8       56.     The Site is a "facility," as that term is defined in CERCLA § 101(9), 42 U.S.C. §

9  9601(9).

10      57.     A "release" or threatened release of PCE, other Chemicals of Concern, and other

11  "hazardous substances," as defined in CERCLA §§ 101(22), (14), 42 U.S.C. §§ 9601(22), (14),

12  has occurred at the Site.

13      58.     Plaintiffs did not cause or contribute to, and deny liability for costs incurred as the

14  result of, the alleged release or threatened release of Chemicals of Concern at the Site.  However,

15  in the interest of an expeditious cleanup and acting in good faith, Plaintiffs have incurred and

16  continue to incur necessary response costs to investigate, remove, and remediate the

17  environmental contamination at the Site consistent with the National Contingency Plan.

18      59.     Defendants are strictly liable to Plaintiffs for the costs referred to above and for

19  interest on those costs pursuant to CERCLA § 107(a), 42 U.S.C. § 9607(a).

**SECOND CAUSE OF ACTION**
20
**(Cost Recovery – Declaratory Relief — CERCLA § 113(g) and 28 U.S.C. § 2201 *et seq.*)**
21                                          **(Against All Defendants)**

22      60.     Plaintiffs reallege and incorporate by reference the allegations set forth above in

23  paragraphs 1 through 59, inclusive, as though set forth in full herein.

24      61.     An actual legal controversy exists between Plaintiffs, on the one hand, and

25  Defendants, on the other hand.  Plaintiffs contend that they are entitled to a declaration that

26  Defendants are liable under CERCLA for all past, present, and future response costs and other

27  damages incurred by Plaintiffs in connection with the Site.  Plaintiffs are informed and believe

28  that Defendants contend otherwise.

62.     Plaintiffs desire and are entitled to a declaration of the parties' respective rights and duties pursuant to CERCLA § 113(g), 42 U.S.C. § 9613(g) and 28 U.S.C. § 2201 *et seq*.  No adequate or speedy remedy exists for Plaintiffs in the absence of such a judicial declaration. Accordingly, Plaintiffs hereby request a declaration from the Court setting forth Plaintiffs' and Defendants' liability for past, present and future response, removal and remediation costs, and other penalties and/or damages imposed on Plaintiffs in connection with the Site.

**THIRD CAUSE OF ACTION**
**(Abatement of a Public Nuisance)**
**(Against All Defendants)**

63.     Plaintiffs reallege and incorporate by reference the allegations set forth above in paragraphs 1 through 62, inclusive, as though set forth in full herein.

64.     California Civil Code § 3479 defines a "nuisance," in relevant part, as "[a]nything which is injurious to health, . . . or is indecent or offensive to the senses, or an obstruction to the free use of the property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake, or river, bay, stream, canal or basin."

65.     California Civil Code § 3480 defines a "public nuisance" as "[o]ne which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal."

66.     Defendants caused or contributed to the alleged past or present handling, storage, treatment, transportation, or disposal of Chemicals of Concern in the environment in, at, from, and around the Site, including the waters of the State of California, because each Defendant released, discharged, or otherwise discarded Chemicals of Concern during their dry cleaning operations or controlled the Property from which Chemicals of Concern were released or otherwise discarded, but failed to prevent or abate such contamination.

67.     Defendants' acts and omissions in causing and contributing to releases of Chemicals of Concern in, at, from, and around the Site created a condition that is injurious to health, is indecent or offensive to the senses.

68.     The public nuisance condition and related endangerments to health and the

FIRST AMENDED COMPLAINT

environment arising from released Chemicals of Concern in, at, and around the Site affects the entire surrounding community because it interferes with the free use and enjoyment of publicly-owned property and natural resources, including surface water and groundwater, as well as creating a public health risk from the vapors intruding peoples' homes and places of work.

69.     Defendants have caused, created, maintained, contributed to, and neglected to abate a "public nuisance," as defined in California Civil Code §§ 3479 and 3480, namely the actual and potential endangerments to health and the environment created by the Chemicals of Concern contamination.

70.     The release or disposal of Chemicals of Concern, as alleged herein, constitutes a nuisance as the release or disposal is a violation of California Water Code §§ 13050(m), 13350, and 13387, California Health and Safety Code §§ 25249.5, 5411, 5411.5, and 117555, California Fish and Game Code § 5650, California Civil Code §§ 3479 and 3480, California Code of Civil Procedure § 731, California Penal Code §§ 372, 374.2, and 374.8, Ordinance Code of San Joaquin County, California §§ 5-6400, 5-6410, 5-6411, and 5-6601, and City of Stockton Municipal Code §§ 13.08.080, 13.08.100 *et seq.*, and 16.36.080, the purpose of which are to set a standard of care or conduct to protect the public and the environment from the type of improper activities engaged in by Defendants.  Therefore, such improper activities and violations constitute a nuisance *per se*.

71.     Plaintiffs have sustained special injury as a further direct and proximate result of the alleged continuing public nuisance and/or public nuisance *per se* created by Defendants' ownership and operation of the Property or dry cleaning business.

72.     Defendants have failed to comply with federal, state, local, and common law.

73.     Plaintiffs have suffered special injury and damages as a direct and proximate result of the contamination at, under, and around the Property because Plaintiffs have been required to investigate the soil, soil vapor, groundwater, and indoor air.

74.     The continuing nuisance complained of is abatable and Plaintiffs have demanded that Defendants abate the continuing nuisance complained of, and hereby reiterates that demand.

75.     Plaintiffs did not consent to Defendants' conduct in causing and contributing to the

1  public nuisance.

2      76.    Defendants are strictly, jointly and severally liable for abatement of the public

3  nuisance.

4      77.    Plaintiffs are entitled to relief restraining and enjoining Defendants and requiring

5  each of them, jointly and severally, promptly and competently to take such action as may be

6  necessary to abate the public nuisance and for reimbursing Plaintiffs for all monitoring and

7  investigation costs incurred and to be incurred at the Site.

8                       **FOURTH CAUSE OF ACTION**
                        **(Abatement of a Private Nuisance)**
9                       **(Against All Defendants)**

10      78.    Plaintiffs reallege and incorporate by reference the allegations set forth above in

11  paragraphs 1 through 77, inclusive, as though set forth in full herein.

12      79.    Defendants caused or contributed to the alleged past or present handling, storage,

13  treatment, transportation, or disposal of Chemicals of Concern in the environment in, at, from,

14  and around the Site, including the waters of the State of California, because each Defendant

15  released or otherwise discarded those Chemicals of Concern during their dry cleaning operations

16  or controlled the equipment or Property from which those contaminants were released or

17  otherwise discarded, but failed to prevent or abate such contamination.

18      80.    Defendants' acts or omissions contributed to or caused the discharge and release of

19  Chemicals of Concern in, at, from, and around the Site, which have interfered with Plaintiffs' free

20  use and enjoyment of their property.

21      81.    The release or disposal of the Chemicals of Concern, as alleged herein, constitutes

22  a nuisance as the release or disposal is a violation of California Water Code §§ 13050(m), 13350,

23  and 13387, California Health and Safety Code §§ 25249.5, 5411, 5411.5, and 117555, California

24  Fish and Game Code § 5650, Civil Code §§ 3479 and 3480, California Code of Civil Procedure §

25  731, California Penal Code §§ 372, 374.2, and 374.8, Ordinance Code of San Joaquin County,

26  California §§ 5-6400, 5-6410, 5-6411, and 5-6601, and City of Stockton Municipal Code §§

27  13.08.080, 13.08.100 *et seq.*, and 16.36.080, the purpose of which are to set a standard of care or

28  conduct to protect the public and the environment from the type of improper activities engaged in

1    by Defendants.  Therefore, such improper activities and violations constitute a nuisance *per se*.

2          82.     Defendants have failed to comply with federal, state, local, and common law.

3          83.     The continuing nuisance complained of is abatable and Plaintiffs have demanded

4    that Defendants abate the continuing nuisance complained of, and hereby reiterates that demand.

5          84.     Defendants are strictly, jointly and severally liable for investigation and abatement

6    of the alleged continuing nuisance.

7          85.     As a direct and proximate result of the acts, omissions, and conduct of Defendants,

8    Plaintiffs have suffered and continues to suffer damages as alleged herein. The above-described

9    acts, omissions, and conduct of Defendants are and have been without the consent, knowledge,

10   against the will, and in violation of the rights of Plaintiffs.

11         86.     Plaintiffs are entitled to injunctive relief restraining and enjoining Defendants and

12   requiring each of them, jointly and severally, promptly and competently to take such action as

13   may be necessary to abate the alleged continuing private nuisance and to reimburse Plaintiffs for

14   all past and future response costs and other damages.

15   **FIFTH CAUSE OF ACTION**<br>**(Continuing Trespass)**

16   **(Against All Defendants)**

17         87.     Plaintiffs reallege and incorporate by reference the allegations set forth above in

18   paragraphs 1 through 86, inclusive, as though set forth in full herein.

19         88.     Defendants, without the consent or knowledge of Plaintiffs, released Chemicals of

20   Concern and knew or should have known that any such release would contaminate the soil, soil

21   vapor, groundwater, and indoor air at, beneath, and around the Site; and that unless the release

22   was immediately contained and cleaned up, it would spread and travel through the soil, surface

23   water, and groundwater into adjacent properties and buildings.

24         89.     Unless Defendants are ordered immediately to investigate and clean up the alleged

25   contamination of the soil, soil vapor, groundwater, and indoor air, it will be necessary for

26   Plaintiffs to commence many successive actions against Defendants to secure compensation for

27   the damages sustained, thus requiring a multiplicity of suits.

28         90.     Plaintiffs have no adequate remedy at law for the injuries suffered by reason of the

acts, omissions, and conduct of Defendants and by reason of the trespass committed by them, and this Court should grant injunctive relief to compel Defendants immediately to investigate and clean up the alleged contamination of the soil, soil vapor, groundwater, and indoor air at, beneath, and around the Site.

91.     As a direct and proximate result of the acts, omissions, and conduct of Defendants and of the continuing trespass caused thereby, Plaintiffs have suffered and continues to suffer damages as previously described herein, including other consequential, incidental, and general damages to be proven at trial.

## SIXTH CAUSE OF ACTION
### (Negligence)
### (Against All Defendants)

92.     Plaintiffs reallege and incorporate by reference the allegations set forth above in paragraphs 1 through 91, inclusive, as though set forth in full herein.

93.     By virtue of the alleged facts and circumstances of the alleged contamination in and around the Site, the doctrine of *res ipsa loquitur* is applicable to the claim against each of the Defendants.   Under such doctrine, the burden of proving that the operations of each of the Defendants' or their agents or tenants were free from all negligence in connection with the release of Chemicals of Concern that have migrated into the soil and groundwater beneath Plaintiffs' Property is placed on Defendants and the burden of proving freedom from liability in connection with the contamination is placed on Defendants.   In the event any or all of the Defendants fail to sustain their respective burdens, they are legally responsible for the damages here claimed. Under the circumstances, the contamination of the soil and groundwater beneath Plaintiff's Property would not have happened but for negligent, accidental, willful or intentional acts on the part of Defendants, their agents, servants, and employees, in the manner in which they conducted their respective operation or activities at the Site.

94.     At various times from 1956 to 1985, Defendants were in possession and control of the Property and had a duty to maintain the real property in good repair and condition free from any hazardous waste.

95.     At various times from 1956 to 1985, Defendants breached their duty to Plaintiffs

in that they negligently maintained, controlled, and used the Property and caused it to go into serious disrepair and caused contamination in the soil and the water table underneath.

96.     In the alternative to the allegation that the doctrine of *res ipsa loquitur* is applicable against each of the Defendants, the alleged contamination and resulting response costs and other damages were due, at least in part, to the negligence of Defendants, and each of them, in their operations, conduct and activities and each Defendants' negligence proximately caused the contamination.

97.     Defendants, while owning, controlling, occupying, and/or conducting operations, owed a duty to Plaintiffs to use, store, maintain, monitor, handle, and remove Chemicals of Concern in a safe and careful manner.  Defendants also owed a duty to Plaintiffs to avoid storing, disposing of, releasing, or allowing to be released any Chemicals of Concern in a manner that would cause injury to Plaintiff, the public, health, or the environment.

98.     Defendants, and each of them, breached their duties by negligently, carelessly, recklessly, intentionally, and illegally using, storing, handling, recycling, transporting, and discharging Chemicals of Concern in a way that contaminants were released into the environment.

99.     Defendants, and each of them, breached their duties by negligently, carelessly, recklessly, intentionally, and illegally delivering, storing, maintaining, monitoring, transferring, and transporting Chemicals of Concern in such a way that the contaminants were released into the environment.

100.     Defendants failed to promptly and diligently contain and clean up the alleged contamination.

101.     The release or disposal of the contaminants, as alleged herein, constitutes a nuisance as the release or disposal is a violation of California Water Code §§ 13050(m), 13350, and 13387, California Health and Safety Code §§ 25249.5, 5411, 5411.5, and 117555, California Fish and Game Code § 5650, California Civil Code §§ 3479 and 3480, California Code of Civil Procedure § 731, California Penal Code §§ 372, 374.2, and 374.8, Ordinance Code of San Joaquin County, California §§ 5-6400, 5-6410, 5-6411, and 5-6601, and City of Stockton

Municipal Code §§ 13.08.080, 13.08.100 *et seq*., and 16.36.080, the purpose of which are to set a standard of care or conduct to protect the public and the environment from the type of improper activities engaged in by Defendants.  Therefore, such improper activities and violations constitute a negligence *per se*.

102.    The injury and damages that Plaintiffs complain of herein resulted from the kind of occurrence the statutory provisions set forth above were designed to prevent.

103.    Plaintiffs are part of the class of persons the statutory provisions were intended to protect.

104.    As a direct and proximate result of the accidental, negligent, reckless, willful or intentional acts, omissions, and conduct of Defendants, Plaintiffs have incurred and will continue to incur, and are entitled to recover, expenses, losses, injury and damages, including consequential, incidental and general damages to be proven at trial.  The above-described acts, omissions, and conduct of Defendants, including the accidental, negligent and intentional acts committed by Defendants, were without the consent or knowledge of, and were against the will of, and in violation of the rights of, Plaintiffs.

**SEVENTH CAUSE OF ACTION**
**(Ultrahazardous Activity)**
**(Against the DuBois, Ruby, Van Gorp, and Calhoun Defendants)**

105.    Plaintiffs reallege and incorporate by reference the allegations set forth above in paragraphs 1 through 104, inclusive, as though set forth in full herein.

106.    Defendants engaged in the ultrahazardous activity of handling, storing, transporting, and releasing Chemicals of Concern, specifically PCE, into the soil and groundwater, notwithstanding the fact that the toxic materials are a serious and substantial risk of harm to health, including cancer, liver disease, and death.  Handling, storing, transporting, and releasing toxic materials is unsafe and harmful, even when the utmost care is utilized.

107.    Defendants' handling, storage, transportation, and releases of Chemicals of Concern as alleged herein necessarily involves a risk of serious harm which cannot be eliminated by the exercise of utmost care and is not a matter of common usage.

108.    The executive and legislative branches in California have determined that the use,

handling, and storage of PCE in the dry cleaning industry should be phased out because of the risk of serious harm to human health and/or the environment resulting from spills of PCE by dry cleaning businesses, which cannot be eliminated by the exercise of utmost care.

109.    Defendants recognized, or should have recognized, that the Site was likely to be harmed by Defendants' use and release of Chemicals of Concern into the soil and groundwater.

110.    As a direct and proximate result of this ultrahazardous activity, Plaintiffs have incurred and will continue to incur expenses, losses, injury, and damages as set forth herein.

**EIGHTH CAUSE OF ACTION**
**(Contribution)**
**(Against All Defendants)**

111.    Plaintiffs reallege and incorporate by reference the allegations set forth above in paragraphs 1 through 110, inclusive, as though set forth in full herein.

112.    Section 1432 of the California Civil Code provides in pertinent part: "a party to a joint, or joint and several obligation, who satisfies more than its share of the claim against all, may require a proportionate contribution from all the parties joined with him."

113.    As a direct and proximate result of Defendants' releases of Chemicals of Concern into the environment, as alleged above, Plaintiffs have and will continue to incur monitoring and investigation costs for cleanup of the contamination at the Site.

114.    Plaintiffs have and will incur more than their fair share of response costs for the Chemicals of Concern at the Site.

115.    As a direct and proximate result of the acts, omissions, and conduct of Defendants, as herein alleged, Plaintiffs are entitled to contribution from Defendants for any and all response costs Plaintiffs have incurred and will continue to incur in connection with the contamination.

**NINTH CAUSE OF ACTION**
**(Contribution – California's Hazardous Substance Account Act)**
**(Against All Defendants)**

116.    Plaintiffs reallege and incorporate by reference the allegations set forth above in paragraphs 1 through 115, inclusive, as though set forth in full herein.

117.    The Carpenter-Presley-Tanner Hazardous Substance Account Act ("HSAA"), California Health & Safety Code § 25300 *et seq.*, was enacted to encourage the expedient cleanup

-18-
Case No. 2:16-CV-01883 SB

1    of hazardous substances in the environment.  In furthering this goal, the California Legislature

2    included the statutory right of contribution for those parties who clean up contaminated properties

3    from those parties who are responsible for the contamination.

4        118.    California Health & Safety Code § 25363(e) provides that "[a]ny person who has

5    incurred removal or remedial action costs in accordance with [HSAA] . . . may seek contribution

6    or indemnity from any person who is liable pursuant to [HSAA]."

7        119.    A "liable person" is defined in California Health & Safety Code § 25323.5(a) as

8    "those persons described in section 107(a) of [CERCLA] (42 U.S.C. Sec. 9607(a))."

9        120.    "Those persons described in section 107(a)" of CERCLA include the owner and

10   operator of a facility, any person who at the time of disposal of any hazardous substance owned

11   or operated any facility at which hazardous substances were disposed, and any person who

12   arranged for disposal or treatment of hazardous substances for transport to a disposal facility.  42

13   U.S.C. § 9607(a).

14       121.    Each Defendant is a "liable person" as defined in California Health & Safety Code

15   § 25323.5(a) and 42 U.S.C. § 9607(a).

16       122.    Each Defendant is a "person" within the meaning of California Health & Safety

17   Code §§ 25319 and 25323(a).

18       123.    There have been releases or threatened releases of hazardous substances into the

19   environment at the Site.

20       124.    As a result of the release or threatened release of hazardous substances, Plaintiffs

21   have incurred monitoring and investigation costs taken in accordance with the HSAA and will

22   incur costs for monitoring and investigation of the soil, soil vapor, groundwater, and indoor air.

23       125.    Plaintiffs have given the Department of Toxic Substances Control notice of the

24   commencement of this action, as required by section 25363(e) of the California Health & Safety

25   Code.

26       126.    As a direct and proximate result of the actions and omissions of Defendants, as

27   alleged herein, and due to the strict liability imposed by the HSAA, Plaintiffs are entitled to

28   contribution from Defendants under California Health & Safety Code § 25363 for all monitoring

and investigation costs they have incurred or will incur in the future.

## TENTH CAUSE OF ACTION
### (Equitable Indemnity)
### (Against All Defendants)

127.    Plaintiffs reallege and incorporate by reference the allegations set forth above in paragraphs 1 through 126, inclusive, as though set forth in full herein.

128.    The liability, if any, that Plaintiffs may have to any person or entity, including, without limitation, any Defendants, any government or regulatory agency, under any law, regulation, or common law principle, relating to the contamination at the Site, is the result, in whole or in part, of the acts or omissions of Defendants.

129.    As between Plaintiffs and Defendants, Defendants are solely responsible for all costs and expenses to investigate and clean up the contamination at and around the Site.

130.    As between Plaintiffs and Defendants, Defendants are responsible for any legal or administrative actions that have been brought, or may be brought in the future, by any public or private persons concerning or related to the presence of contamination at, emanating from and around the Site.

131.    In the event that Plaintiffs are adjudged liable for any or all relief requested in any judicial or administrative action, arising out of or related to the presence of contamination at and emanating from the Site, brought against Plaintiffs by any persons or entities, public or private, such liability is purely secondary, imputed, or technical.  Primary and actual liability attaches to Defendants and is a direct and proximate result of the acts, omissions, and conduct of Defendants.

132.    As a direct and proximate result of the acts, omissions, and conduct of Defendants, as herein alleged, Defendants are bound and obligated to indemnify and hold harmless Plaintiffs from and against all costs, arising out of, or relating to the alleged contamination at and emanating from the Property, and any other costs they have incurred or will incur in the future.

## ELEVENTH CAUSE OF ACTION
### (Breach of Contract)
### (Against the Ruby, Van Gorp, and Calhoun Defendants)

133.    Plaintiffs reallege and incorporate by reference the allegations set forth above in paragraphs 1 through 132, inclusive, as though set forth in full herein.

Case No. 2:16-CV-01883 SB

134.    The Ruby, Van Gorp, and Calhoun Defendants entered into written agreements for the lease of the Property.

135.    The leases included terms requiring the Ruby, Van Gorp, and Calhoun Defendants to indemnify and hold harmless Plaintiffs from claims and liabilities arising from their acts or omissions and to provide general public liability insurance.

136.    The RWQCB directives are covered by the Van Gorp and Calhoun Defendants' obligations under the written lease agreements and, on information and belief, are covered by the Ruby Defendants' obligations under the written agreements.

137.    Plaintiffs tendered a claim for indemnity for the RWQCB directives to the Ruby, Van Gorp, and Calhoun Defendants, but they have refused to indemnify Plaintiffs and hold Plaintiffs harmless.

138.    The Ruby, Van Gorp, and Calhoun Defendants breached their obligations under the written agreements by releasing Chemicals of Concern in violation of municipal, state, and federal laws.

139.    Plaintiffs demanded that Ruby, Van Gorp, and Calhoun Defendants indemnify them for the RWQCB directives and contamination, and hereby reiterate that demand.

140.    Contained within the written agreements are provisions for fees.  As a result of the breaches of the agreements by the Ruby, Van Gorp, and Calhoun Defendants, Plaintiffs were forced to hire counsel and expend fees and costs.  Accordingly, Plaintiffs are entitled to recoup said fees and costs in an amount to be determined by the Court.

141.    Plaintiffs have performed all conditions, covenants, and promises required by them in accordance with the terms and conditions of the written agreements.

142.    The above material facts constitute breaches of the written agreements by the Ruby, Van Gorp, and Calhoun Defendants.  Their acts, omissions, and conduct further breached the implied covenant of good faith and fair dealing contained in the written agreements.

143.    As a direct and proximate result of the Ruby, Van Gorp, and Calhoun Defendants' breaches of the written agreements, Plaintiffs have been damaged and will continue to suffer damages, including attorneys' fees, expert witness fees, and emotional distress.

**TWELFTH CAUSE OF ACTION**
**(Express Indemnity)**
**(Against All Ruby, Van Gorp, and Calhoun Defendants)**

144.    Plaintiffs reallege and incorporate by reference the allegations set forth above in paragraphs 1 through 143, inclusive, as though set forth in full herein.

145.    Plaintiffs are currently complying with the directives of the RWQCB to assess the soil, groundwater, and indoor air.

146.    The Van Gorp and Calhoun Defendants, and on information and belief the Ruby Defendants, entered into indemnity agreements, which require them to hold harmless and indemnify and defend Plaintiffs.

147.    Plaintiffs demanded that the Ruby, Van Gorp, and Calhoun Defendants indemnify them for the RWQCB directives and contamination, and hereby reiterate that demand.

148.    The Ruby, Van Gorp, and Calhoun Defendants failed to defend or indemnify Plaintiffs.

149.    As a direct and proximate result of the Ruby, Van Gorp, and Calhoun Defendants' failure to indemnify Plaintiffs, Plaintiffs have been damaged and will continue to suffer damages including attorneys' fees, expert witness fees, and emotional distress.

**THIRTEENTH CAUSE OF ACTION**
**(Waste)**
**(Against All Defendants)**

150.    Plaintiffs reallege and incorporate by reference the allegations set forth above in paragraphs 1 through 149, inclusive, as though set forth in full herein.

151.    During the period of each Defendant's occupancy of the Property, Defendants committed waste by intentionally, negligently, or accidentally releasing Chemicals of Concern.

152.    The release or disposal of Chemicals of Concern as alleged herein constitutes waste.

153.    As a direct and proximate result of Defendants' waste, Plaintiffs have been damaged and will continue to suffer damages, including response costs, attorneys' fees, expert witness fees, reduced value, and impediments to financing.

/ / /

Case No. 2:16-CV-01883 SB

FIRST AMENDED COMPLAINT

**FOURTEENTH CAUSE OF ACTION**
**(Declaratory Relief)**
**(Against All Defendants)**

154.    Plaintiffs reallege and incorporate by reference the allegations set forth above in paragraphs 1 through 153, inclusive, as though set forth in full herein.

155.    An actual dispute and controversy has arisen and now exists among the parties to this action concerning their respective rights and duties in that Plaintiffs contend, and Defendants deny, that Defendants are responsible for the alleged contamination at the Site, and are obligated to pay for the costs of the investigation and cleanup.

156.    Because the extent and magnitude of the contamination at the Site are not fully known at this time, and the investigatory and monitoring works are ongoing, Plaintiffs will incur necessary monitoring and investigation costs, including but not limited to investigatory expenses and attorneys' fees in the future.

157.    Plaintiffs desire a judicial determination of their rights and duties and a declaration that Defendants are liable to Plaintiffs for all costs incurred or to be incurred by Plaintiffs at the Property and that Defendants are liable for the cleanup of the alleged contamination at the Site.

158.    Plaintiffs are entitled to a declaratory judgment establishing the liability of Defendants for such monitoring and investigation costs for the purpose of this and any subsequent action or actions to recover further monitoring and investigation costs.

159.    A judicial declaration is necessary and appropriate under the present circumstances in order that Plaintiffs may ascertain their rights and duties

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that judgment be entered in their favor for the following:

1.    For a preliminary and permanent injunction requiring Defendants to undertake at their sole cost and consistent with the National Oil and Hazardous Substances Pollution Contingency Plan (the "NCP") at 40 C.F.R. Part 300, all actions necessary to investigate and abate the nuisance conditions and endangerments to health or the environment that may be presented by Defendants' use and disposal of "hazardous substances" as alleged above.

-23-                                                          Case No. 2:16-CV-01883 SB

2.     For an order requiring Defendants to undertake at their sole cost all actions necessary to investigate and remediate the contamination;

3.     For a declaration that Defendants are liable under CERCLA for all past, present, and future response costs and other costs which may be incurred by Plaintiffs at the Site;

4.     For a declaration that Defendants are liable under HSAA § 25363(e) and are liable to Plaintiffs in contribution and/or indemnity under HSAA § 25363(e) for all past, present, and future response costs and other costs which may be incurred by Plaintiffs at the Site;

5.     For damages from Defendants to compensate Plaintiffs for the costs they have incurred and will incur in response, removal, or remedial efforts, the exact amount of which will be ascertained according to proof;

6.     For treble damages pursuant to California Code of Civil Procedure § 732;

7.     For compensatory and consequential damages in excess of $3 million;

8.     For an award to Plaintiffs for their costs of litigation, including attorneys' fees and expert witness fees pursuant to California Code of Civil Procedure §§ 1021.5 and 1021.6 and written contract;

9.     For exemplary damages against Defendants according to proof;

10.     For punitive damages against Defendants according to proof;

11.     For prejudgment and post-judgment interest;

12.     For all costs of suit herein;

13.     For such other and further relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiffs hereby demand trial by jury of any and all issues so triable.

DATED: July 11, 2017          PALADIN LAW GROUP® LLP

By:   /s/ *Bret A. Stone*

Bret A. Stone
Counsel for Miller Marital Deduction Trust
by and through its trustees Helen Miller and
James Morris, and Helen Miller