1  Bret A. Stone        SBN 190161  BStone@PaladinLaw.com
   Melanie A. Mariotti  SBN 309000  MMariotti@PaladinLaw.com
2  PALADIN LAW GROUP® LLP
   220 W. Gutierrez Street
3  Santa Barbara, CA  93101
   Telephone:      (805) 898-9700
4  Facsimile:      (805) 852-2495

5  Counsel for the Miller Marital Deduction Trust, by
   and through its trustees, Helen Miller and James Morris;
6  and Helen Miller

7                  UNITED STATES DISTRICT COURT

8              EASTERN DISTRICT OF CALIFORNIA

9                     SACRAMENTO DIVISION

10

11 | MILLER MARITAL DEDUCTION TRUST, | Case No. 2:16-cv-01883-SB
   | by and through its trustees, Helen Miller and |
12 | James Morris; and HELEN MILLER, an | MILLER MARITAL DEDUCTION TRUST
   | individual, | AND HELEN MILLER'S NOTICE OF
13 | | MOTION AND MOTION FOR A
   |            *Plaintiffs,* | PRELIMINARY INJUNCTION TO ABATE A
14 | | PUBLIC AND PRIVATE NUISANCE
   |            v. | AGAINST DOROTHY CALHOUN AND THE
15 | | ESTATE OF RICHARD CALHOUN,
   | ESTATE OF MARK B. DUBOIS, | DECEASED, AND MEMORANDUM OF
16 | DECEASED, an individual and dba Glo Dry | POINTS AND AUTHORITIES IN SUPPORT
   | Cleaning System, *et al.*, | THEREOF
17 | |
   |            *Defendants.* | WITH ORAL ARGUMENT
18 | |
   | | Hearing:
19 | | February 28, 2018
   | | 1:30pm
20 | | Dept.: TELEPHONICALLY
21 | | Judge Stanley A. Bastian
22 |———————————————————————| Complaint filed: August 10, 2016
   | AND RELATED CROSS-ACTIONS. | Discovery cut-off: January 2, 2018
23 | | Trial date: May 21, 2018

24

25

26

27

28



---

MOTION FOR A PRELIMINARY INJUNCTION

**NOTICE OF MOTION AND MOTION**

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on February 28, 2018 at 1:30 p.m. via telephonic conference call[1] before the Honorable Stanley Bastian, Plaintiffs and Counter-Defendants Miller Marital Deduction Trust, by and through its trustees Helen Miller and James Morris, and Helen Miller, individually (collectively, the "Miller Trust") hereby move the Court for an order enjoining Defendant-in-Default Dorothy Calhoun and Defendant Estate of Richard Calhoun, Deceased (collectively, the "Calhouns") to conduct a Remedial Investigation/Feasibility Study pursuant to the National Oil and Hazardous Substances Pollution Contingency Plan.  The motion is to be determined with oral argument unless the Court determines a hearing is unnecessary and the Miller Trust intends to provide no oral testimony.

The motion is based upon Federal Rule of Civil Procedure Rule 65(a) and should be granted because (1) the Miller Trust will suffer irreparable harm if the injunction is not granted, (2) the balance of equities favors the Miller Trust, (3) the Miller Trust is likely to succeed on the merits of its public and private nuisance claim against the Calhouns, and (4) the public interest favors the granting of the injunction.

The motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities below, the accompanying Declarations of Bret A. Stone, James M. Morris, Barry Bryan, and Alborz Wozniak, the accompanying Request for Judicial Notice and Proposed Order, all pleadings and papers on file in this action, and such oral argument and other matters as may be presented to the Court at the time of hearing.

Dated: January 25, 2018             PALADIN LAW GROUP® LLP

                                    */s/  Bret A. Stone*

                                    Counsel for Miller Marital Deduction Trust
                                    by and through its trustees Helen Miller and
                                    James Morris, and Helen Miller

---

[1] Per the Clerk, the conference call number is 1-888-636-3807. The access code is 8839796. The security code is 1883.

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### TABLE OF CONTENTS

3

I.   INTRODUCTION ................................................................................................. 1

4

II.   FACTS............................................................................................................... 2

5

   A.   Property ownership and the leasing of the Property ................................... 2

6

   B.   Contamination of the Property .................................................................... 3

7

   C.   Groundwater use in the area........................................................................ 5

8

   D.   National Contingency Plan and Remedial Investigation/Feasibility Study ......................... 5

9

III.   PROCEDURAL HISTORY .............................................................................. 5

10

   A.   Dorothy Calhoun's default ........................................................................... 5

11

   B.   The Estate of Richard Calhoun, Deceased's representation by his insurer......................... 6

12

IV.   ISSUES ........................................................................................................... 6

13

V.   LEGAL STANDARD ....................................................................................... 7

14

VI.   ARGUMENT .................................................................................................. 7

15

   A.   The factors favoring a preliminary injunction are easily met in this case. .......................... 7

16

      1.   Likelihood of success on the merits ....................................................... 8

17

      2.   Irreparable injury ................................................................................. 11

18

      3.   Balance of the equities ......................................................................... 12

19

      4.   Public interest....................................................................................... 13

20

   B.   A mandatory preliminary injunction is appropriate. ................................. 13

21

VII.   CONCLUSION ............................................................................................. 15

22

23

24

25

26

27



28



MOTION FOR A PRELIMINARY INJUNCTION

# TABLE OF AUTHORITIES

## CASES

*Aerojet-General Corp. v. Superior Court*, 211 Cal. App. 3d 216 (1989) .................................13

*Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2001)...............................1, 7

*Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531 (1987) ...................................................11

*Bayless Inv. & Trading Co. v. Chevron USA, Inc.*, 1994 U.S. Dist. LEXIS 12190
  (D. Ariz. 1994) .........................................................................................................................14

*Bennett v. Lew*, 151 Cal. App. 3d 1177 (1984) .........................................................................14

*Birke v. Oakwood Worldwide,* 169 Cal. App. 4th 1540 (2009) ..................................................10

*California ex rel. Van De Kamp v. Tahoe Reg'l Planning Agency*, 766 F.2d 1316
  (9th Cir. 1985) .........................................................................................................................13

*City and County of San Francisco v. City Investment Corp.*, 15 Cal. App. 3d 1031
  (1971) .......................................................................................................................................14

*Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).................................................11

*Goldie's Bookstore, Inc. v. Superior Court of the State of California*, 739 F.2d 466
  (9th Cir. 1984) .........................................................................................................................13

*Greyhound Exhibitgroup, Inc. v. E.L. U.L. Realty Corp.*, 973 F.2d 155 (2d Cir.
  1992) ........................................................................................................................................11

*Lands Council v. McNair*, 537 F.3d 981 (9th Cir. 2008).............................................................13

*Lincoln Props., Ltd. v Higgins*, 1993 U.S. Dist. LEXIS 1251 (E.D. Cal. January
  21, 1993) .............................................................................................................................14, 15

*Mangini v. Aerojet-General Corp.*, 230 Cal. App. 3d 1125 (1991).............................................8

*McCormack v. Hiedeman*, 694 F.3d 1004 (9th Cir. 2012)...........................................................7

*McKinnon v. Kwong Wah Restaurant,* 83 F.3d 498 (1st Cir. 1996) ...........................................11

*Orange County Water Dist. v. Sabic Innovative Plastics US*, 14 Cal. App. 5th 343
  (2017) .......................................................................................................................................10

*People ex rel. Van De Kamp v. Marsh*, 687 F. Supp. 495 (N.D. Cal. 1988) .............................13

*People v. Morehouse*, 74 Cal. App. 2d 870 (1946)....................................................................14



MOTION FOR A PRELIMINARY INJUNCTION

*Sanchez v. Esso Std. Oil Co.*, 572 F.3d 1 (1st Cir. 2009)............................................14

*United States v. Price*, 688 F.2d 204 (3d Cir. 1982)...........................................7, 13, 14

*Wilson v. Amoco Corp.*, 989 F. Supp. 1159 (D. Wyo. 1998).............................13, 14

*Winter v. Nat'l Res. Def. Council*, 555 U.S. 7 (2008)..............................................1, 7

**STATUTES**

Cal. Civ. Code § 3479...............................................................................8, 9, 10

Cal. Civ. Code § 3480.....................................................................................8, 9

Cal. Civ. Code § 3481......................................................................................10

Cal. Civ. Code § 3493........................................................................................9

Cal. Civ. Code § 670..........................................................................................9

Cal. Civ. Proc. Code § 731................................................................................11

Cal. Health & Safety Code § 25249.8................................................................9

Cal. Health & Safety Code §§ 25249.5 *et seq.*..................................................9

Cal. Probate Code §§ 550–555...........................................................................6

Cal. Water Code § 102........................................................................................9

Cal. Water Code § 113........................................................................................5

Cal. Water Code § 13050....................................................................................9

Cal. Water Code § 13200(g)...............................................................................5

Cal. Water Code §§ 13240-13241.......................................................................5

**RULES**

Fed. R. Civ. Proc. 65(a)......................................................................................1

**REGULATIONS**

40 C.F.R. § 300.430........................................................................................1, 5



MOTION FOR A PRELIMINARY INJUNCTION

1

## I.  INTRODUCTION

2      Plaintiffs and Counter-Defendants James Morris and Helen Miller as trustees of the Miller

3  Marital Deduction Trust, and Helen Miller as an individual (collectively, the "Miller Trust") bring

4  this motion for a preliminary injunction in order to reduce the adverse impact of environmental

5  contamination caused by, among others, Defendant-in-Default Dorothy Calhoun and Defendant

6  Estate of Richard Calhoun, Deceased (collectively, the "Calhouns").  The Calhouns owned and

7  operated a dry cleaning business, Glo Dry Cleaning System, at the Miller Trust's property.

8  Releases of dry cleaning solvent from those operations contaminated the soil, soil vapor,

9  groundwater, and indoor air at the property, and that contamination has spread and is continuing

10  to spread to the surrounding area.  The preliminary injunction that the Miller Trust seeks with this

11  motion is the completion by the Calhouns of a Remedial Investigation/Feasibility Study

12  ("RI/FS"), as required by and consistent with the National Oil and Hazardous Substances

13  Pollution Contingency Plan ("NCP").  *See* 40 C.F.R. § 300.430 (2018).  This is the necessary next

14  step in addressing the contamination, and the sooner this step is taken, the sooner the

15  contamination can be cleaned up.

16      A moving party is entitled to a preliminary injunction under Federal Rule of Civil

17  Procedure 65(a), if he establishes "that he is likely to succeed on the merits, that he is likely to

18  suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his

19  favor, and that an injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*,

20  632 F.3d 1127, 1131 (9th Cir. 2001) (*quoting Winter v. Nat'l Res. Def. Council*, 555 U.S. 7, 18

21  (2008)).  Here, as set forth below, the evidence establishes: 1) that the Miller Trust will likely

22  prevail on its public and private nuisance claims against the Calhouns; 2) it will continue to suffer

23  irreparable harm should the preliminary injunction not be granted; 3) the balance of the equities

24  favors the granting of the preliminary injunction; and 4) the preliminary injunction the Miller

25  Trust seeks is in the public interest.  The Miller Trust is therefore entitled to the preliminary

26  injunctive relief sought in this motion.

27      The Court should issue the preliminary injunction requiring the Calhouns to fully and

28  promptly investigate the endangerment to public health and the environment which the

MOTION FOR A PRELIMINARY INJUNCTION

contamination presents. Unless the Court issues the preliminary injunction that the Miller Trust requests, more groundwater, whose beneficial uses include domestic, municipal, agricultural and industrial supply, will be contaminated and the contamination will continue to migrate to other nearby properties affecting the indoor air quality and threatening the health of the occupants of those buildings.

## II.   FACTS

### A.   Property ownership and the leasing of the Property

The Miller Marital Deduction Trust is the current owner of the real property located at 6045 Pacific Avenue in Stockton, California (the "Property").[2] The previous owner was Jack Miller, who owned the Property from 1970 until it was put into the Miller Family Trust in 1989.[3] Upon Jack Miller's death in 2002, the Property was transferred into the Miller Marital Deduction Trust.[4] James Morris and Helen Miller are co-trustees of the Miller Marital Deduction Trust.[5]

Between approximately 1956 and 1985, a dry-cleaning business named Glo Dry Cleaning System ("Glo Dry Cleaning") operated on the Property.[6] Dorothy and Richard Calhoun owned and operated Glo Dry Cleaning between 1981 and 1985 after purchasing it from the previous owners, the Van Gorps.[7] The Calhouns assumed the lease the Van Gorps had with Jack Miller.[8] Richard Calhoun operated the dry cleaning machines at Glo Dry Cleaning.[9] Before purchasing Glo Dry Cleaning, Richard Calhoun was a truck driver, and after walking out on his lease at the

---

[2] *See* Declaration of James Morris in Support of The Miller Trust's Motion for Preliminary Injunction ("Morris Decl."), filed herewith, at ¶ 2; Exh. 1.

[3] *See* Morris Decl. at ¶¶ 3-4; Exh. 2; Exh. 3.

[4] *See* Morris Decl. at ¶¶ 5-6; Exh. 4; Request for Judicial Notice in Support of The Miller Trust's Motion for a Preliminary Injunction ("RJN"), filed herewith, at ¶ 7, Exh. 7.

[5] *See* Morris Decl. at ¶ 7; Exh. 5.

[6] *See* Declaration of Alborz Wozniak in Support of The Miller Trust's Motion for a Preliminary Injunction, ("Wozniak Decl."), filed herewith, at ¶ 1, Exh. 1 at p. 3.

[7] *See* Declaration of Bret A. Stone in Support of The Miller Trust's Motion for a Preliminary Injunction ("Stone Decl."), filed herewith, at ¶ 2, Exh. 1 at 24:19-25:4; Declaration of Barry Bryan in Support of The Miller Trust's Motion for a Preliminary Injunction ("Bryan Decl."), filed herewith, at ¶ 3, Exh. 1-5.

[8] *See* Morris Decl. at ¶ 9, Exh. 8; ¶ 10, Exh. 9; Stone Decl. at ¶ 2, Exh. 1 at Deposition Exh. 13.

[9] *See* Stone Decl. at ¶ 2, Exh. 1 at 65:11-67:2, ¶ 3, Exh. 2 at pg. 26:10-27:1.



1  Property in 1985, he returned to that line of work.[10]

2  **B.    Contamination of the Property**

3  In 2015, the Miller Trust attempted to sell the Property to a third party.[11] After conducting a

4  Phase II environmental assessment as part of the due diligence, the sale of the Property fell

5  through due to the discovery of chlorinated solvents in the soil and soil vapor at the Property.[12]

6  Upon further investigation, the Miller Trust discovered that the contamination expanded beyond

7  the confines of the Property and is impacting adjacent and downgradient properties (the "Site").[13]

8  Currently, the extent of the groundwater contamination plume, soil impacts, and vapor intrusion

9  still need to be completely characterized and defined.[14] Until the investigation is complete, an

10  effective and complete remediation strategy cannot be designed for the Site.[15]

11  The   primary   hazardous   substance   contaminating   the   groundwater   and   soil   is

12  tetrachloroethene ("PCE") and its breakdown products including trichloroethene ("TCE"),

13  dichloroethane ("DCE"), and vinyl chloride.[16] All of these chemicals are likely carcinogenic,

14  manmade   and   considered   "hazardous   substances"   by   the   federal   and   California   state

15  governments. 40 CFR § 261.31 (2018). Numerous studies have shown that historical operations at

16  dry cleaners are responsible for PCE contamination.[17] PCE was the primary solvent used by dry

17  cleaners historically.[18] PCE contamination from dry cleaners can occur through a variety of

18  different methods including: dry cleaning equipment failure, dry cleaning equipment operation,

19  dry cleaning equipment maintenance, solvent storage and transfer, discharges of dry cleaning

20

21  —————————————————

22  [10] *See* Stone Decl. at ¶ 2, Exh. 1 at 17:5-18:5, 36:4-9, 36:24-37:2, ¶ 3, Exh. 2 at 43:13-15; Bryan
Decl. at ¶ 7, Exh. 5.

23  [11] *See* Morris Decl. at ¶ 8; Exh. 6.

24  [12] *See* Morris Decl. at ¶ 8; Exh. 7.

25  [13] *See* Wozniak Decl. at ¶¶ 5, 7, 9-10, Exh. 6 at pp.10-11.

26  [14] *See* Wozniak Decl. ¶ 6, 10, 14, Exh. 8.

27  [15] *See* Wozniak Decl. at ¶ 12.

28  [16] *See* Wozniak Decl. at ¶ 1, Exh. 1 at pp. 16-17, ¶4; Morris Decl. at ¶ 12, Exh. 11.

[17] *See* Wozniak Decl. at ¶ 1, Exh. 1 at pp. 14-16; RJN at ¶¶ 1-4, Exhs. 1-4.

[18] *See* Wozniak Decl. at ¶ 1, Exh. 1; RJN at ¶¶1-4, Exhs. 1-4.



MOTION FOR A PRELIMINARY INJUNCTION

wastes, and other spills and discharges.[19] Studies have shown that the vast majority of dry cleaners have some amount of chlorinated solvent contamination.[20] A 2007 study of dry cleaners conducted by the Santa Clara Valley Water District showed that at least 87% of the dry cleaners in Santa Clara Valley were pursuing investigation, remediation, and/or are closed sites due to PCE contamination of the soil and groundwater.[21] A 2001 study found that most states agree that 75% of dry cleaners have contaminated the environment with PCE.[22] Within the Central Valley, the region where Glo Dry Cleaning is located, a 1992 study by the Regional Water Quality Control Board – Central Valley Region (the "Regional Board") found that out of twenty-one wells used for water supply, twenty were impacted by PCE from dry cleaners.[23]

Glo Dry Cleaning used PCE in its operations as a dry cleaning solvent.[24] Helen Miller's expert, Steve Sadler, identified several different pathways through which a release of PCE could have occurred at Glo Dry Cleaning including: a "run to fail" maintenance schedule, meaning that a PCE spill would indicate maintenance was required; and the regular day-to-day operations of the dry cleaning machines, including disposals and spills of separator water containing PCE.[25] The Calhouns' rebuttal expert does not dispute that these events could have occurred and admitted that PCE was probably released at the Property during, and as a consequence of, Glo Dry Cleaning's operations.[26] Additionally, the Calhouns' rebuttal expert is unfamiliar with the government reports cited above and did not use them in formulating his rebuttal opinion.[27] Therefore, it is highly likely that due to the historical use of PCE at the Property, the presence of PCE in the soil, soil vapor, groundwater, and indoor air at and emanating from the Property is due

---

[19] *See* RJN at ¶ 1, Exh. 1 at p. 2.

[20] *See* RJN at ¶¶ 1-4, Exhs. 1-4.

[21] *See* RJN at ¶ 4, Exh. 4 at p. 17.

[22] *See* RJN at ¶ 3, Exh. 3.

[23] *See* RJN at ¶ 2, Exh. 2 at p. 2.

[24] *See* Wozniak Decl. at ¶ 1, Exh. 1 at p. 4, ¶ 5; Stone Decl. at ¶ 4, Exh. 3 at MMDT0001385.

[25] *See* Stone Decl. at ¶ 4, Exh. 3 at MMDT0001385-86.

[26] *See* Stone Decl. at ¶ 5, Exh. 4 at 25:10-19; 38:15-24, 39:11-21, 41:2-9, 42:25-43:16.

[27] *See* Stone Decl. at ¶ 5, Exh. 4 at 105:11-106:6.



1  to the operations of Glo Dry Cleaning.

2  **C.    Groundwater use in the area**

3       The Regional Board has regulatory authority and oversight over all groundwater within its

4  region, including the groundwater at the Site. *See* Cal. Water Code §§ 113, 13200(g). It is also

5  responsible for developing and implementing Water Quality Control Plans (the "Basin Plan")

6  which form the basis for its regulatory actions. *See* Cal. Water Code §§ 13240-13241. The Basin

7  Plan sets forth the beneficial uses of groundwater in the region and the water quality objectives to

8  protect those uses.[28] Per the Regional Board, all groundwater in the region is considered "suitable

9  or potentially suitable" for a variety of uses including municipal and domestic supply, agricultural

10  supply and industrial supply.[29] However, groundwater is not suitable for these uses if it is

11  contaminated by pollution.[30]

12  **D.    National Contingency Plan and Remedial Investigation/Feasibility Study**

13       The NCP, set forth in 40 C.F.R. Part 300, is the required process through which a

14  contaminated site is investigated and ultimately remediated. The first step in the NCP process is

15  to conduct an RI/FS. The RI/FS is not a remedial measure, but an investigative one. Specifically,

16  the Remedial Investigation's purpose "is to collect data necessary to adequately characterize the

17  site for the purpose of developing and evaluating effective remedial alternatives." 40 C.F.R. §

18  300.430(d)(1) (2018). The objective of the Feasibility Study "is to ensure that appropriate

19  remedial alternatives are developed and evaluated such that relevant information concerning the

20  remedial action options can be presented to a decision-maker and an appropriate remedy

21  selected." 40 CFR § 300.430(e)(1) (2018). The RI/FS can be described a site characterization and

22  remedial action determination based upon the information collected as part of the investigation.

23                          **III.   PROCEDURAL HISTORY**

24  **A.    Dorothy Calhoun's default**

25       The Miller Trust filed its original Complaint in this action on August 10, 2016.   That

26  _____

27  [28] *See* RJN at ¶ 6, Exh. 6 at p. II-2.01 and II-3.00.

     [29] *See id.*

28  [30] *See* RJN at ¶ 6, Exh. 6 at p. II-3.00.



Complaint named as a defendant Dorothy Calhoun, both as an individual and dba Glo Dry Cleaning System, on all causes of action. ECF 1.  The Complaint and Summons were served on Dorothy Calhoun on October 1, 2016. ECF 12.  Dorothy Calhoun did not answer or otherwise respond to the Complaint.  Accordingly, a default was requested, ECF 13, and entered against her, ECF 14.  On September 12, 2017, the Miller Trust filed its First Amended Complaint ("FAC"). The FAC also named Dorothy Calhoun as a defendant on all causes of action including, in particular, the causes of action at issue here—the third and fourth causes of action for nuisance abatement. ECF 34 at 11:7–14:14. The FAC and Summons were served on Dorothy Calhoun on September 13, 2017. ECF 17.   Again, she did not file a response to the FAC and has not otherwise appeared in this action (though her deposition was taken pursuant to a subpoena). Accordingly, the Miller Trust filed a request on November 17, 2017 that her default be entered. ECF 46.  And the Clerk of the Court granted that request and entered her default on November 29, 2017. ECF 47.

**B.    The Estate of Richard Calhoun, Deceased's representation by his insurer**

The Miller Trust's Complaint and FAC also name the estate of Dorothy Calhoun's now-deceased husband, Richard Calhoun, as a defendant, both as an individual and dba Glo Dry Cleaning System, on all causes of action.  The defendant was identified as, and the claims were alleged against, "Estate of Richard Calhoun, Deceased," pursuant to California Probate Code §§ 550–555, to establish the decedent's liability for which the decedent was protected by insurance. *Id.* Accordingly, Richard Calhoun's insurer, Insurance Company of the West ("ICW"), is defending, and is the real party in interest for, the Estate of Richard, Calhoun, Deceased, in this action, *see e.g.* ECF 22, and it is ICW that will perform and pay for the RI/FS that the Miller Trust seeks with this motion—assuming the Court grants this motion.

## IV.  ISSUES

This motion presents the Court with the following issues:

(1)    Is the Miller Trust likely to succeed on the merits of its public nuisance claim against the Calhouns?

(2)    Is it likely that the Miller Trust will suffer irreparable harm if the Court does not grant



1  the preliminary injunction that the Miller Trust seeks?

2       (3)    Does the balance of equities tip in favor of the Miller Trust?

3       (4)    Would the preliminary injunction be in the public interest?

4  ## V.   LEGAL STANDARD

5       The Miller Trust requests the Court exercise its broad equitable powers and issue a

6  preliminary injunction against the Calhouns to investigate the public and private nuisance at the

7  Property. The injunction is limited to requiring the Calhouns to create, obtain regulatory approval

8  for, and conduct an RI/FS to promptly and fully characterize the nature and extent of the

9  contamination at the Site.  In order to obtain a preliminary injunction, a movant "must establish

10  that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence

11  of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the

12  public interest." *Alliance for the Wild Rockies*, 632 F.3d at 1131 (quoting *Winter*, 555 U.S. at 18).

13       Typically, preliminary injunctions are prohibitory as a preliminary injunction is designed to

14  keep a case in status quo while the merits of the case are determined. *See McCormack v.*

15  *Hiedeman*, 694 F.3d 1004, 1019 (9th Cir. 2012). However, in cases, like this one, where the

16  situation is one where action is occurring and the situation is not static, a preliminary injunction

17  may instead issue in order to prevent the situation from deteriorating further by ordering a party

18  to act. *See United States v. Price*, 688 F.2d 204, 212 (3d Cir. 1982).

19  ## VI.   ARGUMENT

20  **A.   The factors favoring a preliminary injunction are easily met in this case.**

21       The four factors used in determining whether or not to grant a preliminary injunction favor

22  the Miller Trust. Therefore, this Court should issue the preliminary injunction as requested by the

23  Miller Trust as it has a strong likelihood of success on the merits of its public and private

24  nuisance claims, irreparable harm to the Miller Trust and the public will occur in the absence of

25  the preliminary injunction, the balance of the equities favors the Miller Trust, the public, and the

26  environment over the Calhouns and the preliminary injunction is in the public interest because the

27  public has a strong interest in protecting its groundwater from further contamination.

28  / / /



1          **1.     Likelihood of success on the merits**

2          The Miller Trust is likely to succeed on the merits of its public and private nuisance claims

3   against the Calhouns under California law. Therefore, this factor favors the granting of a

4   preliminary injunction against the Calhouns.

5          This motion for a preliminary injunction is based on the Miller Trust's public and private

6   nuisance causes of action against the Calhouns. "California nuisance law is a creature of statute."

7   *Mangini v. Aerojet-General Corp.*, 230 Cal. App. 3d 1125, 1134-35 (1991). Based upon the

8   statutory provisions set forth below, the PCE contamination of the soil, soil vapor, groundwater,

9   and indoor air at and emanating from the Property clearly constitutes a public and private

10  nuisance. Further, having met the elements for public and private nuisance causes of action,

11  California statutory law provides a specific remedy for the Miller Trust to enjoin the nuisance.

12         California Civil Code § 3479 defines "nuisance" as:

13              Anything which is **injurious to health**, or is indecent or offensive to the
                senses, or an **obstruction to the free use of property, so as to interfere**
14              **with the comfortable enjoyment of life or property**, or **unlawfully**
                **obstructs the free passage or use, in the customary manner**, of any
15              navigable lake, or river, bay, stream, canal, or **basin**, or any public park,
                square, street, or highway, **is a nuisance**.
16

17  Cal. Civ. Code § 3479 (emphasis added). A "public nuisance" is further defined as "one which

18  affects, at the same time an entire community or neighborhood, or any considerable number of

19  persons, although the extent of the annoyance or damage inflicted upon individuals may be

20  unequal." Cal. Civ. Code § 3480.

21         As discussed above, PCE, which entered into the environment due to Glo Dry Cleaning and

22  its owners and operators, has contaminated and degraded the quality of the groundwater beneath

23  and adjacent to the Property.[31] Therefore, such contamination unlawfully obstructs the free use, in

24  the customary manner, of a portion of the Central Valley basin because the PCE-contaminated

25  groundwater may not be used for the domestic, municipal, agricultural, or industrial purposes

26  clearly designated for this basin.[32] Consequently, as defined in the statute, the contamination

---

27     [31] *See* Wozniak Decl. at ¶ 1, Exh. 1 at p. 16, ¶¶ 4-5, 7, Exh. 2 at pp. 8-9, Exh. 6 at pp. 9-11.

28     [32] *See* RJN at ¶ 6, Exh. 6 at p. II-2.01 and II-3.00; Wozniak Decl. at ¶ 11.



MOTION FOR A PRELIMINARY INJUNCTION

1    constitutes a nuisance. Cal. Civ. Code § 3479. In addition, because PCE and its breakdown

2    products have contaminated the groundwater beneath and adjacent to the Property, the

3    contamination affects, at the same time, an entire community or neighborhood, or any

4    considerable number of persons, which makes the nuisance a public nuisance.[33] Furthermore,

5    California Water Code § 13050(e) defines "waters of the State" to mean "any water, surface or

6    groundwater, including saline waters, within the boundaries of the State." Groundwater is a

7    publicly-owned natural resource of the People of the State of California. Cal. Water Code § 102;

8    Cal. Civ. Code § 670. The PCE contamination of this resource exposes the present and future

9    users of the water supply within San Joaquin County to toxic material and a threat of loss of use

10   of the groundwater as their water supply due to the PCE contamination.[34] Additionally, the

11   groundwater contamination is affecting a significant number of people as the contamination has

12   spread to the properties underlying adjacent buildings.[35] The indoor air quality in the adjacent

13   buildings is of significant concern to the Regional Board which has required a Proposition 65

14   notice due to the reduced indoor air quality caused by the groundwater contamination from the

15   Miller Trust Property.[36, 37] Thus, as defined in California Civil Code § 3480, the nuisance at the

16   Property is a "public nuisance."

17        Finally, in some cases, a private party must demonstrate "special injury" in order to

18   maintain an action for public nuisance. Civil Code § 3493 provides that "(a) private person may

19   maintain on action for public nuisance, if it is specially injurious to himself, but not otherwise."

20   However, there is no such requirement if the nuisance is both a public nuisance and a private

21   nuisance.   "[W]ith respect to the special injury requirement . . . a legion of . . . authorities

22

23        [33] *See* Wozniak Decl. at ¶ 1, Exh. 1 at p. 16, ¶¶ 4-5, 7, Exh. 2 at pp. 8-9, Exh. 6 at pp. 9-1.

24        [34] *See* RJN at ¶ 6, Exh. 6 at p. II-2.01 and II-3.00; Wozniak Decl. at ¶ 11.

25        [35] *See* Wozniak Decl. at ¶ 7, Exh. 6 at pp. 9-11, Exh. 4, ¶¶ 9-10.

          [36] *See* RJN at ¶ 5, Exh. 5; Wozniak Decl. at ¶¶ 9-10.

26        [37] Proposition 65 refers to an initiative passed by California voters in 1986 which mandates a
27   required warning for exposure to chemicals known to cause cancer, birth defects, or other reproductive
     harm. Cal. Health & Safety Code §§ 25249.5 *et seq.* The required chemicals to warn for are on a list
     maintained by the State of California. Cal. Health & Safety Code § 25249.8. PCE is on that list. *See*
28   https://oehha.ca.gov/proposition-65/chemicals/tetrachloroethylene-perchloroethylene.

1   recognize that, when the nuisance is a private as well as a public one, there is no requirement the

2   plaintiff suffer damage different in kind from that suffered by the general public." *Birke v.*

3   *Oakwood Worldwide,* 169 Cal. App. 4th 1540, 1551 (2009).

4       The nuisance here is a private as well as a public one. Both private and public nuisance

5   have identical factual elements except that a public nuisance requires a showing of a substantial

6   number of people affected by it. The California Civil Code differentiates between the two types

7   of nuisance by stating that every nuisance which is not a public nuisance is a private one. Civ.

8   Code § 3481. A private nuisance cause of action merely requires a showing of interference with

9   "the use or enjoyment of a property interest." *Orange County Water Dist. v. Sabic Innovative*

10   *Plastics US*, 14 Cal. App. 5th 343, 417 (2017). The Miller Trust was unable to sell the Property

11   due to the pollution contaminating it, which is "an obstruction to the free use of property …"[38]

12   Civ. Code § 3479. Clearly, the contamination at the Property is causing interference with the

13   Miller Trust's use of the Property, which is a private nuisance. The Miller Trust is, therefore, not

14   required to show a special injury in order to show a likelihood of success on the merits of its

15   public nuisance claim.

16       In any event, even if the Miller Trust were required to show special injury, it is easily

17   shown here.  The PCE released, spilled or discharged by the Calhouns has polluted the Property,

18   and subjected the Miller Trust, simply by virtue of its ownership of the Property, to liability for

19   the remediation of the contamination as it has been required to participate in and pay for the

20   investigation to date.[39] Additionally, due to the contamination, the Miller Trust now has to

21   provide warnings to its tenants about the contamination and the dangers of being on the Property

22   pursuant to Proposition 65.[40] Despite a pre-suit demand that the Calhouns address the

23   contamination, the Calhouns have not contributed a single dollar toward the investigation costs.[41]

24       Therefore, the Miller Trust, as a "person whose property is injuriously affected, or whose

25   

26   [38] *See* Morris Decl. at ¶ 8, Exh. 6 and 7.

27   [39] *See* Morris Decl. at ¶ 12, Exh. 13, ¶ 14.

    [40] *See* Morris Decl. at ¶ 13, Exh. 15.

28   [41] See Stone Decl. at ¶¶ 1 and 7, Exh. 1, Deposition Exhibit 13.



MOTION FOR A PRELIMINARY INJUNCTION

1    personal enjoyment is lessened by a nuisance," is expressly authorized to bring an action to abate

2    the nuisance, whether public or private. Cal. Civ. Proc. Code § 731.

3        With respect to Dorothy Calhoun, the default judgment against her means that all

4    allegations in the First Amended Complaint against her are deemed admitted and all her

5    affirmative defenses are forfeited. *See Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir.

6    1977); *Greyhound Exhibitgroup, Inc. v. E.L. U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992);

7    *McKinnon v. Kwong Wah Restaurant,* 83 F.3d 498, 505 (1st Cir. 1996). Therefore, the Miller

8    Trust has a strong likelihood of succeeding on the merits with respect to its public and private

9    nuisance claims against her.

10        **2.    Irreparable injury**

11        The contamination on the Property will cause further irreparable injury unless the

12    preliminary injunction is granted.  According to the Supreme Court, "environmental injury, by its

13    nature, can seldom be adequately remedied by money damages and is often permanent or at least

14    of long duration, i.e., irreparable. If such an injury is sufficiently likely, therefore, the balance of

15    harms will usually favor the issuance of an injunction to protect the environment." *Amoco Prod.*

16    *Co. v. Village of Gambell*, 480 U.S. 531, 545 (1987). Without a preliminary injunction, the Miller

17    Trust and the public have a substantial likelihood of suffering further irreparable harm. Currently,

18    the contamination in the soil, soil vapor, groundwater, and indoor air at and emanating from the

19    Property has not been sufficiently characterized in order for remedial action to be determined.[42]

20    Sufficient data exists to demonstrate that possible downgradient impacts include contamination in

21    a nearby residential neighborhood.[43] Further, elevated levels of PCE in indoor air samples were

22    found in the building on the adjacent property.[44] These impacts are only expected to increase in

23    amount and intensity if the contamination continues to spread without an effective remedy.[45] The

24    longer it takes to complete the full investigation, the more the contamination will spread, the more

25

26    [42] *See* Morris Decl. at ¶ 12, Exh. 14; Wozniak Decl. at ¶ 6 and ¶ 12.

27    [43] *See* Morris Decl. at ¶ 12, Exh. 14; Wozniak Decl. at ¶¶ 9-10.

      [44] *See* Wozniak Decl. at ¶ 7, Exh. 4 at pp. 3-7 and Exh. 5 at pp. 3-4, ¶¶ 9-10.

28    [45] *See* Wozniak Decl. at ¶ 5.



MOTION FOR A PRELIMINARY INJUNCTION

1    "irreparable injury" will occur, and the more contamination will have to be cleaned up.[46]

2    Without the preliminary injunction, the contamination will continue to be undefined making

3    it impossible to design a method to abate it.[47] This harm posed by this risk to the Miller Trust

4    cannot be remedied by money damages. Only by characterizing the contamination and

5    determining an appropriate remediation method via an RI/FS, can the Miller Trust, the

6    environment, and the public be sufficiently protected.

7    **3.    Balance of the equities**

8    In the balance of the equities, the equities favor the Miller Trust rather than the Calhouns.

9    The Court must balance the harm to the Miller Trust, the public, and the environment by denying

10   the preliminary injunction against the harm that would be caused to the Calhouns by granting the

11   preliminary injunction. Here, the harm to the Miller Trust, the public, and the environment is

12   substantially greater than the harm to the Calhouns. For the Miller Trust, allowing the

13   contamination to continue to spread in the groundwater is harmful to its interests as it increases

14   the cost of investigation and remediation in addition to causing further property damage and harm

15   to the environment and increasing the threat to public health and safety. Currently, the

16   contamination is known to be affecting the indoor air quality of at least one nearby store.[48]   As

17   the contamination continues to spread downgradient, it is likely that more locations will be

18   affected, increasing the cost of the remediation.[49] As for the Calhouns, any harm to them is not

19   significant because the RI/FS is the next step in the process of site investigation which needs to be

20   undertaken in order for the Site to ultimately be cleaned up.[50] To date, the Miller Trust is the only

21   party to pay for any of the investigation costs.[51] The Calhouns have paid nothing and not

22   responded to the Regional Board's letters.[52] Although, the Calhouns, or, more precisely, their

23

24       [46] See Wozniak Decl. at ¶ 5.

         [47] See Wozniak Decl. at ¶¶ 6 and 12.

25       [48] See RJN at ¶5, Exh. 5; Wozniak Decl. at ¶ 7, Exh. 6, ¶¶ 9-10.

26       [49] See Morris Decl. at ¶ 12, Exh. 14; Wozniak Decl. at ¶ 7, Exh. 6, ¶¶ 5, 9-10.

         [50] See Wozniak Decl. at ¶¶ 12 and 16.

27       [51] See Stone Decl. at ¶ 7; Morris Decl. at ¶ 14.

28       [52] See Stone Decl. at ¶ 6, Exh. 5 at 51:13-52:3 and 52:14-53:1.



MOTION FOR A PRELIMINARY INJUNCTION

1    insurer, ICW, will have to spend money to fulfill the requirements of the preliminary injunction,

2    pecuniary loss is not an adequate basis for denying injunctive relief where, as here, other

3    compensatory relief is available during the litigation. *See California ex rel. Van De Kamp v.*

4    *Tahoe Reg'l Planning Agency*, 766 F.2d 1316, 1319 (9th Cir. 1985) (citing *Goldie's Bookstore,*

5    *Inc. v. Superior Court of the State of California*, 739 F.2d 466, 471 (9th Cir. 1984)); *see also*

6    *People ex rel. Van De Kamp v. Marsh*, 687 F. Supp. 495, 501 (N.D. Cal. 1988). Therefore, the

7    balance of equities tips sharply in favor of granting the preliminary injunction that the Miller

8    Trust seeks.

9         **4.    Public interest**

10        The preliminary injunction should be granted because it is in the public interest. In this

11   case, the public has a strong interest in protecting its health and safety as well as keeping its

12   groundwater contamination free and available for a variety of uses. California courts have noted

13   that "[p]ollution of the ground and river waters is damage to public property, as well as a direct

14   injury to public welfare." *Aerojet-General Corp. v. Superior Court*, 211 Cal. App. 3d 216, 229

15   (1989). Additionally, the Ninth Circuit has noted that there is a well-established public interest in

16   avoiding irreparable environmental injury. *Lands Council v. McNair*, 537 F.3d 981, 1005 (9th

17   Cir. 2008). A refusal to grant the preliminary injunction would lead to further downgradient

18   contamination in the groundwater basin.[53] Additionally, the Ninth Circuit has held that the public

19   interest in avoiding irreparable environmental injury "outweighs economic concerns in cases

20   where the plaintiffs were likely to succeed on the merits of their underlying claim." *Lands*

21   *Council*, 537 F.3d at 1005. Therefore, the public interest in this case favors the granting of the

22   preliminary injunction.

23   **B.    A mandatory preliminary injunction is appropriate.**

24        Courts have found that mandatory preliminary injunctions are appropriate in the context of

25   environmental contamination since the situation can only deteriorate without a court's action. *See*

26   *Wilson v. Amoco Corp.*, 989 F. Supp. 1159, 1179 (D. Wyo. 1998); *Price*, 688 F.2d at 212;

27

28        [53] *See* Wozniak Decl. at ¶¶ 4-7 and 12.

1  *Sanchez v. Esso Std. Oil Co.*, 572 F.3d 1, 20-21 (1st Cir. 2009) (reversed on other grounds,

2  affirmed as to the preliminary injunction granted to conduct a site assessment). Furthermore,

3  under California law, "[i]t is well settled ... that the proper remedy for abatement of a nuisance is

4  a mandatory injunction." *City and County of San Francisco v. City Investment Corp.*, 15 Cal.

5  App. 3d 1031, 1041-1042 (1971). Additionally, preliminary relief may properly be issued to abate

6  a public nuisance under California law. *People v. Morehouse*, 74 Cal. App. 2d 870, 872-876

7  (1946); *see also Bennett v. Lew*, 151 Cal. App. 3d 1177, 1186 (1984). Here, in a situation where

8  there is a public nuisance caused by continuing, migrating environmental contamination which is

9  affecting multiple properties, a mandatory preliminary injunction is appropriate.

10       A mandatory preliminary injunction ordering an investigative activity like an RI/FS is also

11  appropriate. For example, in *Sanchez v. Esso Std. Oil Co.*, the First Circuit found that the district

12  court ordering a site assessment of the contaminated property at issue was "proper and

13  commendable" in light of the "court's legitimate concerns about the possibility of extensive

14  environmental contamination." 572 F.3d at 20-21. Other courts have also ordered diagnostic

15  environmental testing in an appropriate use of a mandatory injunction in environmental cases

16  even if it requires the payment of funds. *Price*, 688 F.2d at 212; *see also Lincoln Props., Ltd. v*

17  *Higgins*, 1993 U.S. Dist. LEXIS 1251, *16 (E.D. Cal. January 21, 1993); *Bayless Inv. & Trading*

18  *Co. v. Chevron USA, Inc.*, 1994 U.S. Dist. LEXIS 12190, at *4-5 (D. Ariz. 1994); *Wilson*, 989 F.

19  Supp. at 1179. Here, the possibility of extensive environmental contamination is significant as the

20  off-Property impacts of the contamination have yet to be fully determined.[54] A mandatory

21  preliminary injunction to investigate and characterize the contamination is required in order to

22  address the contamination at the Site.

23       Similar injunctive relief was issued in *Lincoln Properties*. 1993 U.S. Dist. LEXIS 1251, at

24  *16. There, the court determined that an injunction requiring the dry cleaning defendants to

25  "participate in the investigation, monitoring and testing of the groundwater and PCE pollution"

26  was appropriate with a further injunction issued at a later date once the precise nature and scope

27

28       [54] Morris Decl. at ¶ 12, Exh. 14; Wozniak Decl. at ¶ 6-7, Exh. 6 and 8.



1  of the injunction was determined. *Lincoln Properties*, 1993 U.S. Dist. LEXIS 1251 at *92-93.

2  Here, the Miller Trust is requesting the Court issue a similar order where a further evidentiary

3  hearing can be held to determine the scope and nature of the RI/FS for the terms of the injunction.

4  (That said, if and when the Court grants this motion and issues the preliminary injunction

5  requested, it may be possible for the parties and the Regional Board to agree on the terms and

6  scope of the RI/FS, which would render any further hearing on that issue unnecessary.)

7  ### VII.  CONCLUSION

8  As discussed above, the Miller Trust is likely to succeed on the merits of its public and

9  private nuisance claims against the Calhouns and will likely suffer irreparable injury if the

10  preliminary injunction it seeks is not granted.  Also, the balance of equities is in its favor, and the

11  public has a strong interest in the granting of this preliminary injunction. Therefore, the Court

12  should issue a preliminary injunction against the Calhouns requiring them to perform an RI/FS

13  that promptly and fully characterizes the contamination at the Site as set forth in the Proposed

14  Order lodged herewith. For the foregoing reasons, the Miller Trust's motion for a preliminary

15  injunction to investigate the public and private nuisance at the Site should be granted.

16  Dated: January 25, 2018                  PALADIN LAW GROUP® LLP

17                                 By:   */s/  Bret A. Stone*

18                                       Bret A. Stone
19                                       Counsel for Miller Marital Deduction Trust
                                         by and through its trustees Helen Miller and
20                                       James Morris, and Helen Miller

21

22

23

24

25

26

27

28



MOTION FOR A PRELIMINARY INJUNCTION