UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

AT SACRAMENTO

| | |
|---|---|
| MILLER MARITAL DEDUCTION TRUST, by and through its trustees, Helen Miller and James Morris; and HELEN MILLER, an individual,<br><br>    Plaintiffs,<br><br>    v.<br><br>ESTATE OF MARK B. DUBOIS, *et al.*,<br><br>    Defendants. | No. 2:16-cv-01883-SB<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

Before the Court is Defendant Estate of Jack Miller's ("Jack Miller") Motion for Summary Judgment, ECF No. 61, and Defendant Estate of Richard Calhoun's ("Richard Calhoun") Motion for Summary Judgment, ECF No. 62. The motions were heard without oral argument.

The Miller Marital Deduction Trust, by and through its trustees Helen Miller and James Morris, and Helen Miller, individually (collectively, the "Miller Trust") bring this action to recover the costs associated with investigating and remediating alleged environmental contamination at the real property located at 6054 Pacific Avenue in Stockton, California (the "Property), and the areas where the alleged contamination migrated outside of the boundaries of the Property (the "Site"). The

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ^** 1

Miller Trust's claims against Jack Miller and Richard Calhoun (collectively, "Defendants") are brought pursuant to California Probate Code §§ 550, *et seq.*; a statutory scheme that allows a plaintiff to seek recovery directly from a decedent's insurance, for the decedent's liability to plaintiff. *See* Cal. Prob. Code § 550(a).

The relevant insurance policies each contain a provision excluding coverage for property damage arising from pollution,[1] unless such pollution was "sudden and accidental."[2] Defendants' motions for summary judgment, while independent of one-another, present nearly identical arguments. Defendants contend there is no genuine dispute of material fact that the Miller Trust's claims are barred by the pollution exclusion found in the relevant insurance policies, and that there is no evidence that would allow a reasonable jury to find the "sudden and accidental" exception to the exclusion applies. As such, Defendants claim the Miller Trust cannot meet its burden of proving insurance coverage and summary judgment should be granted.

For the reasons set-forth below, the Court finds the Miller Trust has presented no evidence that would allow a reasonable jury to find a "particular 'sudden and accidental' event" that "contributed substantially" to the contamination at issue in this case. *State v. Allstate Ins. Co.*, 45 Cal. 4th 1008, 1168 (2009). There being no genuine dispute of material fact, the Court finds the Miller Trust's claims against Jack Miller and Richard Calhoun are barred by the

---

[1] The insurance does not apply to "bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water." ECF No. 61-4, Exs. A-C; ECF No. 61-5, Ex. D; ECF No. 62-3, Ex. A.

[2] "[B]ut this exclusion does not apply if such discharge, dispersal, release, or escape is sudden and accidental." ECF No. 61-4, Exs. A-C; ECF No. 61-5, Ex. D; ECF No. 62-3, Ex. A.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ^ 2**

pollution exclusion. Accordingly, Defendants' motions for summary judgment are granted.

## STATEMENT OF FACTS

**History of the Property**

From approximately 1956 to 1985, the Property was home to a dry cleaning business known as the Glo Dry Cleaning System. Mark and Mary DuBois owned and operated the dry cleaning business from approximately 1956 to 1964; followed by John and Katherine Ruby, who owned and operated the business until approximately 1973; then Vance and Helen Van Gorp, who owned and operated the business until approximately 1980. Jack Miller owned the Property and leased it to the Van Gorps in 1979.

In 1981, Dorothy and Richard Calhoun assumed the Van Gorps' lease and became the newest (and final) owners of Glo Dry Cleaning System. And much like the owners who preceded them, the Calhouns did not stay in the business too long. By 1985 the Calhouns abandoned their commercial lease to the Property, and Glo Dry Cleaning System ceased to exist. Decades later, and upon Jack Miller's death in 2002, the Property was transferred from the Miller Family Trust to the Miller Trust.

**Contamination and Litigation**

In 2015, the Miller Trust attempted to sell the Property, but the sale fell through because an environmental assessment to the Property revealed tetrachloroethylene ("PCE") and its breakdown chemicals in the soil and soil vapor. Further investigation revealed the contamination migrated to areas outside the boundaries of the Property. The extent of the contamination is yet to be completely characterized.

The Miller Trust claims Glo Dry Cleaning System is the source of the PCE contamination, and brings this action to recover the costs associated with

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ^ 3**

investigating and remediating the environmental impact of the pollution. The parties to this action are the former owners and operators of the dry cleaning business, and the former owners of the Property.

The Miller Trust's claims against Richard Calhoun and Jack Miller are brought pursuant to California Probate Code §§ 550, *et seq.*; a statutory scheme that allows a plaintiff to seek recovery directly from a decedent's insurance, for the decedent's liability to plaintiff. *See* Cal. Prob. Code § 550(a). In an action under this statutory scheme, the plaintiff names as the defendant, "Estate of (name of decedent), Deceased.," but will serve the summons on the decedent's insurer. *Id.* § 552(a). "The suit technically proceeds against the estate to determine liability, but any such liability is imposed only upon the insurance companies and only up to the amount of any applicable insurance." *Cal. Dep't. of Toxic Substances Control v. Interstate Non-Ferrous Corp.*, 298 F. Supp. 2d 930, 949 (E.D. Cal. 2003).

**Richard Calhoun's Insurer**

It is undisputed that Insurance Company of the West ("ICW") is Richard Calhoun's insurer. ECF No. 71-1 at 3-4, ¶¶ 6-7. ICW issued an insurance policy to Richard Calhoun that was effective from April 1, 1983, to April 1, 1984. The policy was subsequently renewed for an additional year, effective from April 1, 1984 to April 1, 1985. *Id*. The policies provide that ICW "will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, property damage or personal injury caused by an occurrence to which this insurance applies." *Id.* at 4, ¶ 8. The policies also contain what is referred to by the parties as a "pollution exclusion." It provides:

> "[T]his policy does not apply to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ^ 4**

irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water."

*Id*. at 4, ¶ 9. There is an exception to the pollution exclusion "if such discharge, dispersal, release or escape is sudden and accidental." *Id*.

**Jack Miller's Insurers**

It is undisputed that Zurich American Insurance Company ("Zurich") and Allianz Insurance Company ("Allianz") are Jack Miller's insurers. ECF No. 72-1 at 2, ¶¶ 2-3. Zurich issued to Jack Miller three insurance policies covering the period of January 11, 1977, to January 11, 1984. Allianz issued to Jack Miller a single policy covering the period of January 11, 1985, to January 11, 1986. These insurance policies also contain a pollution exclusion, and an exception to the exclusion "if such discharge, dispersal, release or escape is sudden and accidental." *Id*. ¶ 4.

**Motions for Summary Judgment**

On January 25, 2018, Richard Calhoun and Jack Miller filed Motions for Summary Judgment. ECF Nos. 61, 62. Defendants' arguments are nearly identical. They contend that the Miller Trust's claims are barred by the pollution exclusion found in the relevant insurance policies, and that there is no evidence in the record to establish the "sudden and accidental" exception to the exclusion applies. As such, they request summary judgment be entered in their favor.

## STANDARD

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(a). The moving party has the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party satisfies this burden, the non-moving party "must go beyond pleading and identify facts which show a

genuine issue for trial." *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000) (citing *Celotex Corp.*, 477 U.S. at 323-24). "[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotation marks omitted). "[T]here is no genuine dispute of material fact unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

## ANALYSIS

The relevant insurance policies each contain a provision excluding insurance coverage for property damage arising from pollution,[3] unless such pollution was "sudden and accidental." The parties do not dispute that the Miller Trust's action[4] falls within the scope of the pollution exclusion. Thus, the issue before the Court is whether there is sufficient evidence that would allow a reasonable jury to find the "sudden and accidental" exception to the exclusion applies.

### I. Preliminary Issues

The Miller Trust raises several issues the Court will address before reaching the merits of the present motions for summary judgment. First, the Miller Trust

---

[3] "[T]his policy does not apply to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water." ECF No. 72-1 at 2, ¶ 4; ECF No. 71-1 at 4, ¶ 9.

[4] The Miller Trust seeks to recover costs associated with investigating and remediating environmental contamination allegedly emanating from the real property located at 6045 Pacific Avenue, Stockton, California. ECF No. 72-1 at 2, ¶1; *see also* ECF No. 34 at 2, ¶¶ 1-2.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ^ 6**

claims Defendants' motions should be denied as premature because the issue of liability must be decided before the issue of insurance coverage. The Miller Trust is correct in that "the question whether an insurer has a duty to indemnify the insured on a particular claim is ripe for consideration only if the insured has already incurred liability in the underlying action." *Armstrong World Indus., Inc. v. Aetna Cas. & Sur. Co.*, 45 Cal. App. 4th 1, 108 (1996). In a declaratory relief action, however, a trial court may determine whether a claim is covered by an insurance policy, so long as the court does not make a determination as to the amount of the insured's indemnity obligation. *Montrose Chem. Corp. of Ca. v. Admiral Ins. Co.*, 10 Cal. 4th 645, 659 n.9 (1995); *Aitchison v. Founders Ins. Co.*, 166 Cal. App. 2d 432, 439 (1958).

In this case, the Court is not being asked to determine whether Defendants have a duty to indemnify on a particular claim. At issue is whether the Miller Trust's claim is covered by the applicable insurance policies. More specifically, whether there are sufficient facts that would allow a reasonable jury to find the "sudden and accidental" exception to the pollution exclusion applies. This issue is ripe for the Court's consideration.

Second, the Miller Trust argues it does not have the burden of proving insurance coverage, rather, it is Defendants' burden to prove a lack of coverage. The Court disagrees. The Miller Trust's claim against Jack Miller and Richard Calhoun is made pursuant to California Probate Code §§ 550, *et seq*. A plaintiff in such an action bears the burden of proving insurance coverage exists. *Escobedo v. Estate of Snider*, 14 Cal. 4th 1214, 1228 (1997); *Aggio v. Estate of Aggio*, No. C 04-4357 PJH, 2008 WL 2491697, at *4 (N.D. Cal. June 19, 2008).

Third, the Miller Trust argues the burden is on Defendants to prove no "sudden and accidental" releases contributed to the contamination at issue in this case. Again, the Court disagrees. *See Aydin Corp. v. First State Ins. Co.*, 18 Cal.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ^ 7**

4th 1183, 1194 (1998) ("[O]nce the insurer carries its burden of proving that the general pollution exclusion applies, the insured bears the burden of proving the claim comes within the 'sudden and accidental' exception."). It is the Miller Trust's burden to prove the "sudden and accidental" exception reinstates coverage over a claim that is otherwise barred by the pollution exclusion.

At the present stage of litigation, however, it is the Miller Trust's burden to point to specific facts establishing a genuine dispute of material fact for trial. *Celotex Corp.,* 477 U.S. at 324. Stated differently, the Miller Trust must put forward evidence that would allow a reasonable jury to find the "sudden and accidental" exception to the pollution exclusion applies. For the reasons provided below, the Miller Trust has failed to satisfy this burden.

## II. The Sudden and Accidental Exception

The pollution exclusion bars coverage unless "such discharge, dispersal, release or escape is sudden and accidental." ECF No. 71-1 at 4, ¶ 9; ECF No. 72-1 at 2, ¶ 4. The Miller Trust bears the burden of proving the "sudden and accidental" exception applies. *Aydin*, 18 Cal. 4th at 1194.

The term "sudden" has a temporal element and "conveys the sense of an unexpected event that is abrupt or immediate in nature." *Shell Oil Co. v. Winterthur Swiss Ins. Co.*, 12 Cal. App. 4th 715, 755 (1993). "'Accidental' means an unexpected or unintended discharge, not unexpected or unintended damage." *Standun, Inc. v. Fireman's Fund Ins. Co.*, 62 Cal. App. 4th 882, 889 (1998); *Shell Oil Co.*, 12 Cal. App. 4th at 783 ("The exclusions are not contingent on whether the insured expected or intended any property damage. Instead, the exclusions depend on the nature of the polluting event and the insured's knowledge or belief that a pollutant would escape.").

Additionally, the Miller Trust must do more than "speculate that some polluting events may have occurred suddenly or accidentally." *State v. Allstate Ins.*

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ^ 8**

*Co.*, 45 Cal. 4th 1008, 1037 (2009); *Travelers Cas. Sur. Co. v. Superior Court*, 63 Cal. App. 4th 1440, 1460 (1998) (stating the insured "must do more than point to possible" sudden and accidental events; it must show such events caused an "appreciable amount of environmental damage.") "Only if the insured can identify particular sudden and accidental events and prove they contributed substantially to causing indivisible property damage for which the insured bore liability is the insurer obliged to indemnify its insured for the entirety of the damages." *State*, 45 Cal. 4th at 1168.

As a coverage provision, the "sudden and accidental" exception is construed broadly in favor of the insured. *Aydin*, 18 Cal. 4th at 1192.

## III. The Miller Trust's Evidence

The Miller Trust argues there is sufficient circumstantial[5] and expert opinion evidence to create a genuine dispute of material fact that "particular 'sudden and accidental' events" that "contributed substantially" to the contamination in this case. *State*, 45 Cal. 4th at 1037.

### A. Destruction of the Concrete Slab

It appears that in June 1985,[6] Jack Miller hired Jerry Joy and Associates to do some contract work on the Property. ECF No. 71-6, Ex. 12-15. Jack Miller applied for a wrecking permit with the City of Stockton, and it appears the

---

[5] The Court declines to take judicial notice of the studies relied upon by Alborz Wozniak and Steven Sadler in reaching their expert opinions. Request for Judicial Notice, ECF No. 71-10, Exs. 1-4. These documents fail to meet the requirements for judicial notice. *See* Fed. R. Evid. 201. Additionally, even if the Court exercised its discretion to take judicial notice of these materials, they do not raise a genuine issue of material fact as they do not provide any evidence of "sudden and accidental" releases of PCE at the Property.

[6] Because this event allegedly occurred in June 1985, it would have occurred after the expiration of Richard Calhoun's insurance policy (April 1985), and Jack Miller's Zurich insurance policy (January 1984). As such, this event cannot be used to trigger insurance coverage under these insurance policies.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ^ 9**

contractors removed a concrete slab from the Property. ECF No. 71-6 Ex. 14 ("Demo of existing 20x30 from building, removal of slab"). The Miller Trust argues the destruction of this concrete slab is evidence of a "sudden and accidental" discharge of PCE.

To arrive at this conclusion, the Miller Trust illustrates a sequence of events. First, the Miller Trust claims any releases of PCE at the Property would have permeated onto and inside this concrete slab. Then, when the concrete slab was destroyed, PCE would have been released into the environment. This, the Miller Trust argues, constitutes a "sudden and accidental" discharge of PCE because every action taken to break up and remove the slab would result in an unexpected and unintended release of PCE.

The issue with this theory is that the Miller Trust cites to no evidence of PCE being released onto the concrete slab, or that PCE permeated it. And even if PCE did permeate the concrete slab, the Miller Trust cites no evidence to suggest the removal of the slab released any PCE into the environment. The Miller Trust must do more than "speculate that some polluting events may have occurred suddenly and accidentally." *State*, 45 Cal. 4th at 1037. And with no evidence to support this theory, it amounts to nothing more than speculation.

### B. Expert Witness Opinions[7]

---

[7] The parties dispute whether the Miller Trust timely disclosed expert witnesses Alborz Wozniak and Steven Sadler. The Court finds it did not. The parties were required to disclose expert witnesses by October 3, 2017. ECF No. 24. The Miller Trust, in its capacity as Plaintiffs in this action, did not disclose these experts before the deadline. These experts were disclosed by a separate law firm; representing the Miller Trust in a separate capacity; for purpose of defending against a separate counterclaim—one that does not involve Jack Miller or Richard Calhoun. Given the complexity of this case, the number of parties involved, and the risk a party faces for untimely disclosure, it is a surprise to the Court that Plaintiffs' counsel would assume it could benefit from Bassi, Edlin, Huie & Blum's expert witness disclosure. Perhaps counsel can learn from this situation and avoid making the same mistake in the future. Nonetheless, the Court will consider

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ^ 10**

Next, the Miller Trust argues the expert opinions of Alborz Wozniak and Steven Sadler provide sufficient evidence to create a genuine dispute of material fact.

**Alborz Wozniak**

Mr. Wozniak was retained in this matter to help determine the origin and source of the contamination at the Property. ECF No. 72-8 at 1, ¶ 1. In his report, Mr. Wozniak references multiple studies by federal and state agencies that have documented the release of PCE from dry cleaning operations. And those studies identify various mechanisms by which PCE may have been released into the environment in those cases.

Notably, Mr. Wozniak references these studies for the limited purpose of illustrating "the environmental industry's knowledge of drycleaning facilities as a *source* of PCE contamination in the environment." *Id*., Ex. 1 at 14 (emphasis added). It is Mr. Wozniak's opinion that the extremely high levels of PCE in the shallow soil immediately below the area where the dry cleaning equipment was located indicates that, more likely than not, there was at least one release of pure phase PCE at the Property. ECF No. 72-8 at 2, ¶ 10.

The "sudden and accidental" exception, however, requires more than merely identifying the source of contamination. The exception focuses on the *manner* by which pollutants were released from the source. Mr. Wozniak's opinion offers no facts to suggest any release of pure phase PCE was "sudden" or "accidental" as defined by California case-law. For that reason, Mr. Wozniak's opinion does not identify any "particular 'sudden and accidental' event" that "contributed substantially" to the contamination at issue in this case. *State*, 45 Cal. 4th at 1037.

//

---

the expert opinions and, for the reasons that follow, finds they do not create a genuine dispute of material fact.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ^ 11**

**Steven Sadler**

Mr. Sadler was retained in this matter to present opinions regarding the use, operation, and maintenance of certain dry cleaning equipment, and the likelihood of spills and releases of PCE incident to the operation of these machines. ECF No. 71-9, Ex. 1 at 6. Mr. Sadler's original opinion was that (1) the Glo Dry Cleaning equipment used PCE; (2) dry cleaning equipment of this type would need to be maintained on a regular schedule; (3) it is likely that the equipment was not maintained properly and according to schedule; (4) failure to maintain the dry cleaning equipment would likely result in equipment failure, which would result spills and releases of PCE; and (5) typical operation of dry cleaning equipment on-site between 1963 and 1980 would result in on-site disposal of PCE-contaminated materials to trash receptacles and other areas that would allow exposure of PCE to the surrounding environment. ECF No. 71-9, Ex 1, at 12-13.

On March 7, 2018, Mr. Sadler provided additional, updated opinions. Mr. Sadler opined that dry cleaning equipment failure would have led to spills and releases of PCE, "which more likely than not would have happened suddenly and accidentally." ECF No. 71-9 at 3, ¶ 12. Mr. Sadler further opines that "[a]ssuming Richard Calhoun performed proper lint removal and filter maintenance," he would have had to handle and dispose of waste material that would "at times result in sudden and accidental spills of the waste material, and thus a release of PCE." *Id*. ¶ 14. "Additionally, the disposal of PCE contaminated wastewater to on-site drains would more likely than not have led to sudden and accidental spills and releases of PCE." *Id*. ¶ 15.

Mr. Sadler further opines that "[b]ased upon Mr. Wozniak's opinion that it is more likely than not that at least one release of pure phase PCE occurred near the dry-cleaning equipment, it is more likely than not the result of a 'boil over.' A boil over occurs when the operator forgets to turn off the distillation unit used to

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ^** 12

separate water and PCE and as a result, PCE will suddenly and accidentally spill onto the floor or into a drain." *Id*. Finally, Mr. Sadler opines that if there was a spill of pure phase PCE, "such a release would more likely than not be sudden and accidental as PCE is expensive and dry-cleaning operators were careful to preserve the PCE used in their operations." *Id*. at 4, ¶ 18.

Mr. Sadler's opinions fail to create a genuine dispute of material fact for several reasons. First, his opinions are speculative, as they are not supported by any facts in this case. Mr. Sadler opines that equipment failure, due to improper maintenance, would likely have caused spills and releases of PCE. However, Mr. Sadler does not cite to any evidence of the type of equipment maintenance schedule[8] at Glo Dry Cleaning Systems, or the type of equipment maintenance actually performed at Glo Dry Cleaning Systems. Most importantly, Mr. Sadler does not cite to any evidence of equipment failure at Glo Dry Cleaning Systems.

The same is true about Mr. Sadler's opinion that a release of pure phase PCE was the result of a "boil-over." There are simply no facts to support this hypothetical occurrence. Finally, the cost of PCE has no bearing on whether any spills or releases of the chemical were "sudden and accidental."

Second, Mr. Sadler's use of the phrase "sudden and accidental" to describe any alleged releases of PCE is vague and conclusory, as the phrase is not defined in his report. To the extent Mr. Sadler is attempting to use the terms in accordance with California case-law, it is an improper legal conclusion.

---

[8] Mr. Sadler's report states that the EPA recommends a weekly or monthly maintenance schedule, depending on the maintenance required and equipment serviced. And that "[t]ypical pattern and practice would not meet this weekly or monthly schedule, but rather would wait for an indication of failure of a piece of equipment such as a gasket or corroded pipe in the form of spilled PCE." ECF No. 72-9, Ex. 1 at 12-13. Mr. Sadler does not cite to any evidence of the maintenance schedule at Glo Dry Cleaning Systems.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ^ 13**

While Mr. Sadler's opinion offers circumstantial evidence of what *may* have happened at the Property, it fails to identify any "particular 'sudden and accidental' event" that "contributed substantially" to the contamination at issue in this case. *See State*, 45 Cal. 4th at 1037 (holding that the policy holder must do more than speculate that some polluting event may have occurred suddenly and accidentally).

## CONCLUSION

The Miller Trust has failed to offer sufficient evidence that would allow a reasonable jury to find the "sudden and accidental" exception to the pollution exclusion applies. There being no genuine dispute of material fact, the Miller Trust's claim against Jack Miller and Richard Calhoun is barred by the pollution exclusion found in the relevant insurance policies. Accordingly, the Court grants Defendants' motions for summary judgment.

Accordingly, **IT IS HEREBY ORDERED:**

1. Defendant Estate of Jack Miller's Motion for Summary Judgment, ECF No. 61, is **GRANTED**.

2. Defendant Estate of Richard Calhoun's Motion for Summary Judgment, ECF No. 62, is **GRANTED**.

3. The Miller Marital Deduction Trust and Helen Miller's Motion for a Preliminary Injunction, ECF No. 63, is **DENIED as moot**.

//
//
//
//
//
//
//
//

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ^ 14**

4. As for the remaining parties, a telephonic status conference is **SET** for **August 21, 2018** at **10:00 a.m.** The parties shall file a status report no later than seven (7) days prior to the date of the hearing. The report should address the position of the parties and/or any issues that remain unresolved.

5. The parties will dial in to the Court's telephonic conference line ten minutes before the start of the conference. The conference line phone number will be **1-888-636-3807**; Access Code: **8839796**. A security code will not be required.

**IT IS SO ORDERED**. The District Court Clerk is hereby directed to enter this Order, provide copies to counsel, and dismiss from this action Defendant Estate of Jack Miller and Defendant Estate of Richard Calhoun.

**DATED** this 2nd day of July 2018.

_____
Stanley A. Bastian
United States District Judge

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ^** 15